IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, SUCCESSOR-BY-MERGER TO LAWYERS TITLE INSURANCE CORPORATION | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. _____ |
| CAPTIVA LAKE INVESTMENTS, L.L.C., | ) ) | |
| **PLEASE HOLD SERVICE** | ) ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW plaintiff Fidelity National Title Insurance Company, successor-by-merger to Lawyers Title Insurance Corporation, by and through counsel, and states as follows for its Complaint against defendant Captiva Lake Investments, L.L.C.:

### Parties, Jurisdiction & Venue

1.     Plaintiff Fidelity National Title Insurance Company, successor-by-merger to Lawyers Title Insurance Corporation, is and was at all times relevant hereto an entity which:

(a) was formed and/or exists under the laws of the State of California;

(b) has its principal place of business located at 601 Riverside, Jacksonville, Florida, 32204; and

(c) is registered to transact business in Missouri as a foreign company.

2. Defendant Captiva Lake Investments, L.L.C. is and was at all times relevant hereto an entity formed and existing under Missouri law with its principal place of business located within the State of Missouri.

3. Plaintiff is the insurer under that certain contract of insurance evidenced by a written Loan Policy of Title Insurance bearing number G52-0582755 and dated March 15, 2006 ("the Policy"). A true and correct copy of the Policy is attached hereto as Exhibit "A" and fully incorporated herein by this reference.

4. The Policy was issued by Guaranty Land Title Insurance, Inc. ("GLT"), which was then an authorized policy-issuing agent of Lawyers Title Insurance Corporation, which has now been merged into and with Fidelity National Title Insurance Company.

5. The original insured under the Policy was National City Bank of the Midwest and its successors and/or assigns as their interests may appear.

6. Pursuant to a Modification Endorsement to the Policy dated October 3, 2007 ("the Modification Endorsement"), the insured under the Policy became National City Bank and its successors and/or assigns as their interests may appear. A true and correct copy of the Modification Endorsement is attached hereto as Exhibit "B" and fully incorporated herein by this reference.

7. National City Bank of the Midwest and National City Bank are hereinafter identified and referred to collectively as "NCB".

8. Defendant purports to be the insured under the Policy as the successor-in-interest to and/or assignee of NCB pursuant to an Amended and Restated Loan Sale Agreement dated July 22, 2009 ("the Loan Sale Agreement"). A true and correct copy of

the Loan Sale Agreement is attached hereto as Exhibit "C" and fully incorporated herein by this reference.

9. A dispute exists between plaintiff and defendant relative to the issue of whether the Policy obligates the former to defend and/or indemnify the latter against certain mechanics' liens that are hereinafter identified, described, and discussed.

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332(a)(1) in that:

(a) pursuant to 28 U.S.C. Section 1332(c)(1), plaintiff is deemed to be a resident of the State of California or, alternatively, a resident of the State of Florida;

(b) pursuant to 28 U.S.C. Section 1332(c)(1), defendant is deemed to be a resident of the State of Missouri;

(c) there exists diversity of citizenship as between plaintiff and defendant; and

(d) the amount in controversy between plaintiff and defendant exceeds $75,000.00

11. Pursuant to 28 U.S.C. 1391(c), defendant is deemed to be a resident of the Eastern District of Missouri and venue in this District is therefore appropriate pursuant to 28 U.S.C. 1391(a)(1).

## **General Allegations**

12. The Policy was issued in conjunction with the opening and origination of two (2) loans made by NCB to Majestic Pointe Development Company, L.L.C. ("Majestic Pointe"), one in the amount of $20,080,000.00 ("the Construction Note") and one in the amount of $1,200,000.00 ("the Refinance Note").

13. The Construction Note and the Refinance Note relate to a condominium and marina development project ("the Project") that was then being undertaken by Majestic Pointe.

14. The Construction Note and the Refinance Note were both secured by the deed of trust that was insured under the Policy ("the Insured Deed of Trust").

15. The Policy insured the priority status of the Insured Deed of Trust against certain real estate therein identified ("the Insured Parcel").

16. On or about October 24, 2007, NCB and Majestic Pointe renegotiated the Construction Note in order to increase the amount of the loan evidenced by the same from $20,080,000.00 to $21,180,000.00.

17. In conjunction with the renegotiations between NCB and Majestic Pointe, an amended deed of trust was executed and recorded.

18. The Modification Endorsement was issued contemporaneous with the renegotiations undertaken by NCB and Majestic Pointe.

19. Pursuant to the Modification Endorsement, the amended deed of trust by and between NCB and Majestic Pointe became the Insured Deed of Trust under the Policy.

20. Pursuant to the Modification Endorsement, the date of the Policy was amended and became October 25, 2007 instead of March 15, 2006.

21. Pursuant to Insuring Provision No. 7 of the Policy, as amended by the Modification Endorsement, the Policy insures – subject to the Conditions and Stipulations and Exclusions from Coverage set forth therein – against a lack of priority of

the Insured Deed of Trust as against mechanics' liens that relate to work and improvements which were contracted for or commenced <u>prior to</u> October 25, 2007.

22.    Also pursuant to Insuring Provision No. 7 of the Policy, as amended by the Modification Endorsement, the Policy insures – subject to the Conditions and Stipulations and Exclusions from Coverage set forth therein – against a lack of priority of the Insured Deed of Trust as against mechanics' liens that relate to work and improvements which were contracted for or commenced <u>after</u> October 25, 2007, but <u>only if</u>:

(a)    such work and improvements were financed in whole or in part by proceeds from the Construction Loan; <u>and</u>

(b)    NCB had advanced said proceeds as of October 25, 2007 or was obligated to advance said paid proceeds as of October 25, 2007.

23.    Pursuant to paragraph 7(a) of the Conditions and Stipulations to the Policy, plaintiff's liability is limited to the lesser of (a) the face amount of the Policy, (b) the amount of the unpaid principal indebtedness secured by the Insured Deed of Trust, or (c) the diminution in value caused to the Insured Parcel by the claimed defects, liens, or encumbrances.

24.    Pursuant to paragraph 8(d) of the Conditions and Stipulations to the Policy, as amended by the Modification Endorsement, the calculation of any unpaid principal indebtedness for which a claim against the Policy is tendered does not include construction loan advances made after October 25, 2007 unless:

(a)    the purpose of such advances is to finance improvements to or work on the Insured Parcel; <u>and</u>

(b)     NCB was and continued to be obligated to make such advances at and after October 25, 2007.

25.     The proceeds from the loan evidenced by the Construction Note were not immediately and fully advanced and disbursed by NCB to Majestic Pointe on March 15, 2006.

26.     Proceeds from the Construction Note were instead advanced and disbursed on a periodic basis after March 15, 2006.

27.     The disbursement of proceeds from the Construction Note was undertaken solely by NCB.

28.     NCB disbursed the proceeds from the Construction Note pursuant to a Construction Loan Agreement that it entered into with Majestic Pointe and which was dated March 13, 2006 ("the Construction Loan Agreement").  A true and correct copy of the Construction Loan Agreement is attached hereto as Exhibit "D" and fully incorporated herein by this reference.

29.     The Construction Loan Agreement governed, inter alia, the conditions that would have to be satisfied before NCB would be obligated to disburse and advance the proceeds of the Construction Loan to Majestic Pointe.

30.     Regarding the specific title insurance coverage to be afforded to NCB in conjunction with any disbursement it thereafter undertook to complete, Paragraph 5.1(a) of the Construction Loan Agreement provided for the issuance of mechanics' lien coverage by GLT to NCB via the usage of a specific form of endorsement to the Policy that is known as a "pending disbursement endorsement" (hereinafter identified to as a

"PDE" when referring to singularly and as "PDE's", when reference is made to more than one).

31.     Between the opening of the Construction Note on March 15, 2006 and January 14, 2008, NCB disbursed to Majestic Pointe various proceeds from the Construction Note and did so pursuant to the Construction Loan Agreement.

32.     Upon information and belief, GLT issued PDE's to NCB in conjunction with the disbursements that were made between the opening of the Construction Note on March 15, 2006 and January 14, 2008.

33.     Upon information and belief, the Project began encountering difficulties in or about February 2008.

34.     Upon information and belief, the first mechanic's lien relating to the Project was filed against the Insured Parcel on or about April 29, 2008.

35.     The last PDE issued by GLT to NCB prior to the filing of the first mechanic's lien against the Insured Parcel was dated January 14, 2008 ("the January 14, 2008 PDE").  A true and correct copy of the January 14, 2008 PDE is attached hereto as Exhibit "E" and fully incorporated herein by this reference.

36.     Upon information and belief, the form and substance of the January 14, 2008 PDE was similar, if not identical, to each of the PDE's issued by GLT relative to the Policy during the time period beginning March 15, 2006 and ending January 14, 2008.

37.     Pursuant to its express terms, the January 14, 2008 PDE amended the Policy.

38.      Pursuant to the January 14, 2008 PDE, the amount of coverage available under the Policy was increased to $18,804,078.44, which was believed to be the sum total of the amount then having been disbursed by NCB to Majestic Pointe under the Construction Note and pursuant to the Construction Loan Agreement.

39.      By its own terms, the January 14, 2008 PDE did not extend or change the effective date of the Policy, which remained October 25, 2007.

40.      In addition to increasing the amount of coverage available under the Policy, the January 14, 2008 PDE addressed the issue of whether any new "liens", "variations", or "encroachments" against the Insured Parcel had been discovered.

41.      Regarding any newly discovered "liens", variations", or "encroachments", the January 14, 2008 PDE afforded GLT and its principal several options, to-wit:

(a)      GLT and its principal could affirmatively insure against any losses or damages resulting from the enforcement or attempted enforcement of any such matters;

(b)      GLT and its principal could "refuse to issue any further endorsements until and unless such liens are released, satisfied or otherwise discharged and such variations or encroachments are removed"; or

(c)      GLT and its principal could accept escrowed funds that were, in their discretion, sufficient to satisfy any such matters.

42.      Upon information and belief, GLT updated its title search for the Insured Parcel prior to issuing the January 14, 2008 PDE.

43.      Upon information and belief, GLT's updated title search did not reveal any "liens", "variations", or "encroachments" that had arisen since March 15, 2006.

44.     The January 14, 2008 PDE contains a recitation that, as of January 14, 2008, no "liens", "variations", or "encroachments" against, to, or upon the Insured Parcel had been recorded since the previous PDE issued by GLT to NCB.

45.     Upon information and belief, NCB completed the disbursement which related to the January 14, 2008 PDE.

46.     On or about February 27, 2008, GLT was informed of an additional draw request submitted to NCB by Majestic Pointe's general contractor.

47.     GLT did not issue a PDE in response to the draw request that was communicated to it on or about February 27, 2008.

48.     On or about October 29, 2008, GLT was informed of an additional draw request submitted to NCB by Majestic Pointe's general contractor, which request sought an additional disbursement of $252,395.02 and a PDE that increased the Policy's coverage to $20,062,280.80.

49.     By October 29, 2008, several additional mechanics' lien claims that related to the Project had been filed against the Insured Parcel.

50.     Upon information and belief, some or all of the persons and entities who supplied labor, services, and materials for the Project between January 14, 2008 and October 29, 2008 did so in response to and based upon requests and negotiations undertaken directly by NCB and/or its counsel.

51.     Upon receipt of NCB's request for PDE dated October 29, 2008, GLT conducted an updated title search for the Insured Parcel.

52.     Upon information and belief, the effective date of the updated title search that GLT conducted on or about October 29, 2008 was October 24, 2008.

53. The updated title search that GLT conducted on or about October 29, 2008 revealed the existence of two (2) pending lawsuits and nine (9) separate mechanics' liens ("the October 24, 2008 Mechanics' Liens") that were related to the Project.

54. Based upon the results of its updated title search, GLT expressly identified the October 24, 2008 Mechanics' Liens in the PDE that it thereafter issued to NCB ("the October 24, 2008 PDE"). A true and correct copy of the October 24, 2008 PDE is attached hereto as Exhibit "F" and fully incorporated herein by this reference.

55. The October 24, 2008 PDE did not affirmatively insure against losses or damages resulting from the enforcement of the October 24, 2008 Mechanics' Liens.

56. Neither NCB nor any other person or entity ever placed into escrow with GLT any funds to ensure the satisfaction, release, or discharge of the October 24, 2008 Mechanics' Liens.

57. Upon information and belief, it was the intent and belief of GLT that, by reciting the October 24, 2008 Mechanic's Liens in the October 24, 2008 PDE, it was excepting said matters from title insurance coverage.

58. Upon information and belief, NCB also believed and understood that the October 24, 2008 PDE did not provide coverage against the October 24, 2008 Mechanics' Liens.

59. Upon information and belief, GLT prepared and issued to NCB – contemporaneous with the issuance of the October 24, 2008 PDE – an updated commitment for title insurance ("the October 24, 2008 Commitment") that listed the October 24, 2008 Mechanics' Liens as exceptions for which no title insurance coverage

would be provided. A true and correct copy of the October 24, 2008 Commitment is attached hereto as Exhibit "G" and fully incorporated herein by this reference.

60. Upon information and belief, NCB never tendered to GLT or plaintiff a claim relative to the October 24, 2008 Mechanics' Liens.

61. Upon information and belief, NCB never tendered to GLT or plaintiff a claim of any kind relative to the Policy, the Modification Endorsement, or any of the PDE's issued by GLT (which are hereinafter identified as "the Policy Documents" when referred to collectively).

62. In mid-2009, and pursuant to the Loan Sale Agreement, defendant purportedly acquired NCB's rights in and under a variety of documents including the Construction Note and the Refinance Note, as well as the Policy Documents.

63. As of the date of the Loan Sale Agreement, and according to the terms set forth therein, the principal amount due and owing from Majestic Pointe to NCB under the Construction Note was $18,869,057.23.

64. As of the date of the Loan Sale Agreement, and according to the terms set forth therein, the total amount due and owing from Majestic Pointe to NCB under the Construction Note was $20,445,315.07.

65. As of the date of the Loan Sale Agreement, and according to the terms set forth therein, the amount due and owing from Majestic Pointe to NCB under the Refinance Note was $1,303,001.51.

66. As of the date of the Loan Sale Agreement, and according to the terms set forth therein, the total amount due and owing from Majestic Pointe to NCB under both the Construction Note and the Refinance Note was $21,748,316.58.

67.     Defendant purchased the Construction Note and the Refinance Note from NCB for the discounted sum of $10,000,000.00.

68.     Prior to closing its transaction with NCB, defendant had the opportunity to conduct due diligence regarding a variety of matters including the assertion of various mechanics' lien claims against the Insured Parcel (including but not limited to the October 24, 2008 Mechanics' Liens and the Pending Mechanics' Lien Claims, as hereinafter defined).

69.     Exhibit "F" to the Loan Sale Agreement consisted of a commitment for title insurance bearing an effective date of June 26, 2009 and disclosing the existence of various mechanics' lien claims against the Insured Parcel (including but not limited to the October 24, 2008 Liens).

70.     In paragraph 8.2 of the Loan Sale Agreement, defendant represented that it had bargained for and accepted all responsibility associated with a variety of matters, including mechanics' liens that had been asserted against the Insured Parcel.

71.     In paragraph 8.2 of the Loan Sale Agreement, defendant further represented that it was therein assuming all risks of loss associated with a variety of matters, including mechanics' liens that had been asserted against the Insured Parcel and the Policy Documents.

72.     Prior to completing its transaction with NCB, defendant had actual knowledge of the difficulties being encountered by the Project beginning in or about February 2008.

73.     Prior to completing its transaction with NCB, defendant had actual knowledge of the October 24, 2008 Mechanics' Liens.

74.     Prior to completing its transaction with NCB, defendant had actual knowledge of some or all of the Pending Mechanics' Lien Claims.

75.     Pursuant to paragraph 1(a)(i) of the Conditions and Stipulations to the Policy, plaintiff is therefore entitled to assert against defendant any defense to coverage that plaintiff could have previously asserted against NCB.

76.     After completing its purchase of the Construction Note, the Refinance Note, and the Policy Documents, defendant tendered to Lawyers Title its request for defense against various mechanics' lien claims that are presently being prosecuted before the Circuit Court of Camden County, Missouri in Case Nos. 08CM-CC00412, 08CM-CC00427, 08CM-CC00471, 08CM-00488, and 09CM-CC00049 ("the Pending Mechanics' Lien Claims").

77.     Upon information and belief, the Pending Mechanics' Lien Claims include some or all of the October 24, 2008 Mechanics' Liens, but are not limited to the October 24, 2008 Mechanics' Liens.

78.     Plaintiff subsequently agreed to provide defendant with a defense to the Pending Mechanics' Lien Claims pursuant to a reservation of rights.

79.     While plaintiff was providing defendant with a defense to the Pending Mechanics' Lien Claims pursuant to its reservation of rights, defendant sued Lawyers Title in pursuit of a prospective declaration that plaintiff would be contractually obligated to indemnify defendant against any losses associated with the successful prosecution of the Pending Mechanics' Lien Claims.

80.     Lawyers Title removed defendant's action to this Court (Case No. 4:10-CV-00910-DJS) and secured a dismissal of the same.

81.     Plaintiff now seeks a declaration that the Policy Documents do not afford any coverage relative to the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims or, alternatively, that the October 24, 2008 Mechanics' Liens and the Pending Mechanics' Lien Claims are excluded from coverage under the Policy Documents.

82.     Plaintiff's rights under the Policy Documents constitute legally protectable interests that are at stake.

83.     A justiciable controversy exists between plaintiff and defendant in that defendant contends that the Policy Documents afford coverage for the October 24, 2008 Mechanics' Liens and/or the Pending Mechanics' Lien Claims and that the October 24, 2008 Mechanics' Liens and/or the Pending Mechanics' Lien Claims are not excluded from coverage under the Policy Documents.

84.     The issues of whether the Policy Documents afford coverage for the October 24, 2008 Mechanics' Liens and/or the Pending Mechanics' Lien Claims and whether the October 24, 2008 Mechanics' Liens and/or the Pending Mechanics' Lien Claims are excluded from coverage under the Policy Documents is ripe and appropriate for judicial resolution.

85.     Plaintiff lacks an adequate remedy at law.

<u>**Count I – Declaratory Judgment**</u>
**(No Coverage Under The Policy, As Amended By the Modification Endorsement)**

86.     Plaintiff adopts and incorporates paragraphs 1 through 85 of its Complaint as and for paragraph 86, as if fully restated herein.

87.     Upon information and belief, none of the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims relate to improvements or work that was contracted for or commenced prior to October 25, 2007.

88.     Upon information and belief, none of the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims relate to improvements or work for which NCB had made disbursements as of October 25, 2007.

89.     Upon information and belief, none of the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims relate to improvements or work for which NCB was obligated to make disbursements under the Construction Loan Agreement as of October 25, 2007.

90.     Neither the October 24, 2008 Mechanics' Liens nor the Pending Mechanics' Lien Claims are covered under the Policy, as amended by the Modification Endorsement, because (a) they relate to improvements or work that was contracted for or commenced after October 25, 2007; (b) they relate to improvements or work for which NCB had not made disbursements as of October 25, 2007; and/or (c) they relate to improvements or work for which NCB was not obligated to make disbursements under the Construction Loan Agreement as of October 25, 2007.

WHEREFORE, plaintiff Fidelity National Title Insurance Company prays this Court for Judgment in its favor and against defendant Captiva Lake Investments, L.L.C. on Count I of its Complaint and for an Order that:

(a)     declares, decrees, and adjudges that the Policy, as amended by the Modification Endorsement, does not afford coverage for the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Liens Claims; and

(b)     awards plaintiff its costs and fees incurred herein; and

(c)     awards such other and further relief it deems just and proper under the premises.

### Count II – Declaratory Judgment
### (No Coverage Under PDE's Issued On Or Before January 14, 2008)

91.     Plaintiff adopts and incorporates paragraphs 1 through 90 of its Complaint as and for paragraph 91, as if fully restated herein.

92.     Upon information and belief, each of the PDE's that were issued by GLT to NCB between March 15, 2006 and January 14, 2008 contained a recitation that, as of their respective dates, no "liens", "variations", or "encroachments" against, to, or upon the Insured Parcel had been recorded since March 15, 2007.

93.     Upon information and belief, no "liens", "variations", or "encroachments" against, to, or upon the Insured Parcel were recorded between March 15, 2006 and January 14, 2008.

94.     Upon information and belief, none of the PDE's that were issued by GLT to NCB between March 15, 2006 and January 14, 2008 affirmatively insured against any losses or damages resulting from any "liens", "variations", or "encroachments" arising after March 15, 2006.

95.     None of the PDE's that were issued by GLT to NCB between March 15, 2006 and January 14, 2008 affirmatively insured against any of October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims.

96.     Upon information and belief, no monies were escrowed with GLT on or before January 14, 2008 relative to the satisfaction, release, or discharge of any of the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims.

97.     Upon information and belief, no monies were ever escrowed with GLT relative to the satisfaction, release, or discharge of the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims.

98.     None of the PDE's issued by GLT to NCB between March 15, 2006 and January 14, 2008, including the January 14, 2008 PDE, afford coverage for the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims.

WHEREFORE, plaintiff Fidelity National Title Insurance Company prays this Court for Judgment in its favor and against defendant Captiva Lake Investments, L.L.C. on Count II of its Complaint and for an Order that:

(a)     declares, decrees, and adjudges that none of the PDE's issued by GLT between March 15, 2006 and January 14, 2008, including the January 14, 2008 PDE, afford coverage for the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Liens Claims; and

(b)     awards plaintiff its costs and fees incurred herein; and

(c)     awards such other and further relief it deems just and proper under the premises.

## COUNT III – Declaratory Judgment
### (No Coverage Under The October 24, 2008 PDE)

99.     Plaintiff adopts and incorporates paragraphs 1 through 98 of its Complaint as and for paragraph 99, as if fully restated herein.

100.    The October 24, 2008 PDE identifies the October 24, 2008 Mechanics' Liens as matters affecting the Insured Parcel.

101.    Upon information and belief, the October 24, 2008 PDE identifies all "liens", "encroachments", and "variations" that had been recorded against the Insured Parcel between January 14, 2008 and October 24, 2008.

102.    The October 24, 2008 PDE does not affirmatively insure against any losses or damages resulting from enforcement or attempted enforcement of any of the October 24, 2008 Mechanics' Liens or any of the Pending Mechanics' Lien Claims.

103.    Upon information and belief, no monies were escrowed with GLT on or before October 24, 2008 relative to the satisfaction, release, or discharge of any of the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims.

104.    Upon information and belief, no monies were ever escrowed with GLT relative to the satisfaction, release or discharge of any of the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims.

105.    The October 24, 2008 PDE does not afford coverage for the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Lien Claims.

WHEREFORE, plaintiff Fidelity National Title Insurance Company prays this Court for Judgment in its favor and against defendant Captiva Lake Investments, L.L.C. on Count III of its Complaint and for an Order that:

(a)    declares, decrees, and adjudges that the October 24, 2008 PDE does not afford coverage for the October 24, 2008 Mechanics' Liens or the Pending Mechanics' Liens Claims; and

(b)    awards plaintiff its costs and fees incurred herein; and

(c)    awards such other and further relief it deems just and proper under the premises.

## COUNT IV – Declaratory Judgment
### (Excluded From Coverage)

106.     Plaintiff adopts and incorporates paragraphs 1 through 105 of its Complaint as and for paragraph 106, as if fully restated herein.

107.     Paragraph 3(a) of the Exclusions to the Policy excludes from coverage those losses that result from matters which are created, suffered, assumed or agreed to by the insured claimant.

108.     The Pending Mechanics' Lien Claims were created, suffered, assumed or agreed to by NCB and/or defendant in that:

(a)     NCB undertook sole responsibility for disbursing the Construction Note pursuant to the Construction Loan Agreement and was thereby responsible for reviewing and approving all draw requests tendered by Majestic Pointe or its agents;

(b)     NCB was solely in a position to determine, confirm, and verify whether the draws requested tendered by Majestic Pointe or its agents were valid, proper, and substantiated or whether proceeds from the Construction Note were being diverted or otherwise used for improper purposes;

(c)     upon information and belief, NCB and its counsel became directly and actively involved in the requesting and negotiating of work, labor, and materials relating to the Project beginning in or about February 2008;

(d)     upon information and belief, NCB understood and believed that the Project was part of a larger development for which work had commenced prior to March 15, 2006 and the opening of the Construction Note;

(e)     upon information and belief, NCB failed to fully disburse the proceeds of the Construction Note; and

(f)     defendant contractually agreed to accept liability for the Pending Mechanic's Liens and the October 24, 2008 Mechanic's Liens.

109.    Paragraph 3(b) of the Exclusions to the Policy excludes from coverage those matters that were:

(a)     not known to plaintiff;

(b)     not recorded in the public records as of a date certain;

(c)     known to NCB and/or defendant; and

(d)     not disclosed by NCB and/or defendant to plaintiff in writing prior to a date certain.

110.    Contemporaneous with the opening of the Construction Note and the Refinance Note, NCB prepared and executed a Subordination Agreement dated March 13, 2006 ("the Subordination Agreement").

111.    The Subordination Agreement was also executed by Majestic Pointe and Majestic Pointe's general contractor.

112.    The Subordination Agreement contains recitations which evidence that NCB knew or believed that the Insured Parcel could become subject to liens for work, labor, and materials that were supplied for the Project.

113.    Upon information and belief, neither the Subordination Agreement nor any of the contents thereof were disclosed to GLT by NCB.

114.    Upon information and belief, GLT did not have actual knowledge of the Subordination Agreement prior to issuing the Policy.

115.    Upon further information and belief, the Subordination Agreement was never recorded.

116.     Upon information and belief, the contents of the Subordination Agreement were not timely disclosed to GLT or plaintiff.

WHEREFORE, plaintiff Fidelity National Title Insurance Company prays this Court for Judgment in its favor and against defendant Captiva Lake Investments, L.L.C. on Count IV of its Complaint and for an Order that:

(a)     declares, decrees, and adjudges that the October 24, 2008 Mechanics' Liens and the Pending Mechanics' Lien Claims are excluded from coverage under the Policy Documents;

(b)     awards plaintiff its costs and fees incurred herein; and

(b)     awards such other and further relief it deems just and proper under the premises.

Respectfully submitted,

MARTIN, LEIGH, LAWS & FRITZLEN, P.C.

/s/ Shawn T. Briner
Shawn T. Briner, #113136
7733 Forsyth, Suite 1975
St. Louis, MO  63105
Telephone:     (314) 862-5200
Facsimile:     (314) 863-4600
stb@mllfpc.com
**ATTORNEYS FOR PLAINTIFF**