UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:10-CV-1890 (CEJ) |
| CAPTIVA LAKE INVESTMENTS, LLC, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion to compel plaintiff to produce documents and testimony. Plaintiff has filed a response in opposition and, at the Court's direction, has submitted materials for *in camera* review.

I. **Background**

The parties' dispute concerns the availability of coverage under a loan policy of title insurance issued by Lawyers Title Insurance Company (Lawyers Title) to National City Bank. Plaintiff Fidelity National Title Insurance Company (Fidelity) is the successor by merger to Lawyers Title. Defendant Captiva Lake Investments, LLC (Captiva), claims coverage under the policy as a successor or assignee of National City Bank.

In May 2011, Captiva served requests for production. Relevant to this motion, Captiva sought disclosure of "[t]he claims file for the Policy" and "[a]ny and all Documents related to any evaluation of coverage under the Policy." Req. No. 12 and No. 15 [Doc. #91-1]. Fidelity objected to these requests, asserting that the materials were protected by the attorney-client privilege and work product doctrine. Fidelity also produced a privilege log that purported to list all materials withheld as privileged or protected.

Nearly a year after Captiva made its initial requests for production, it learned that Fidelity maintains a "Claims Processing System" (CPS).  According to Fidelity's Claims Handbook, CPS is used to track claims data, including information on reserves, claims payments, and claims resolution.  See Ex. 3 [Doc. 97].  Based on this description of CPS, Captiva argues that it is entitled to any information regarding its claim that is maintained in CPS.

Fidelity provided a packet entitled "Print Screens from CPS" for the Court's *in camera* review[1]; these documents have not been Bates-stamped.  The documents include screen shots of "pages" titled, variously, "Claim and Policy Details," "Analysis – Background," "Analysis – Status," etc.  Not all pages have entries and where entries appear they do not identify an author or date of input.[2]  There is also a "QA Status Report as of 4/26/12," which consists of brief entries describing actions taken with respect to the claim.  The remaining pages consist primarily of correspondence authored by Fidelity employees.  There is no way to determine whether these documents constitute the entire file on the Captiva claim.[3]  The privilege log does not include an entry for the CPS, as such.  Fidelity asserts that it listed the CPS materials on the log as "Status Report," Bates FNT 4241-4250.  These 10 pages are only a portion of the CPS materials.

---

[1] The accompanying cover letter states, "In that CPS is an electronic database, there is no hard file to be produced."

[2] Information such as author and date of entries would presumably be available if the data were produced in electronic format.

[3] Gregory Dawley states in an affidavit that, "To the extent that otherwise discoverable documents . . . have been copied to a part of the CPS system, those documents have already been produced by other means."  Fidelity does not specify what CPS documents have been produced.

On May 23, 2012, Captiva took the deposition of Mark Dickhute.  Mr. Dickhute was employed by Fidelity as major claims counsel and was responsible for handling the Captiva claim.[4]  In the course of his deposition, Mr. Dickhute testified that he prepared monthly "major claims reports" on the Captiva claim.  Fidelity did not identify these reports in its privilege log.  On June 6, 2012, Fidelity updated its privilege log to include the major claims reports, belatedly asserting attorney-client privilege and work product protection.  Captiva asserts that Fidelity has waived any privilege.

The final issue regards Fidelity's assertion of the attorney-client privilege in response to several questions asked during Dickhute's deposition.  Captiva asserts that the privilege does not apply and seeks an order directing Fidelity to allow Dickhute to respond to the questions.

## II.   Discussion

### A.   Captiva's Right to Claim File

Captiva argues that it is entitled to any material that Fidelity maintains in its claim file, citing Grewell v. State Farm Mut. Automobile Ins. Co., 102 S.W.3d 33, 36-37 (Mo. 2003).  In Grewell, the Missouri Supreme Court addressed whether insureds are entitled to have access to their liability insurance claim file.  The court noted that the relationship between insurer and insured is similar to the relationship between attorney and client.  Id. (citing State ex rel. Cain v. Barker, 540 S.W.2d 50 (Mo. 1976)).  And, just as an attorney's file belongs to the client, the insurer's file similarly belongs to the insured.  Id. (citing In the Matter of Gary M. Cupples, 952 S.W.2d 226, 234 (Mo. 1997)

---

[4]Captiva was scheduled to take Mark Dickhute's deposition on April 6, 2012.  On April 3, 2012, Fidelity informed Captiva that Mr. Dickhute's employment was terminated on March 28, 2012.  As a result, Mr. Dickhute's deposition was delayed for several weeks.

(attorney's file belongs to client).  However, subsequent courts have determined that Grewell applies only to materials created before the relationship between insurer and insured became adversarial.  See Scottrade, Inc. v. St. Paul Mercury Ins. Co., 2011 WL 572455, at *4-5, No. 4:09CV1855 SNLJ (E.D. Mo. Feb. 15, 2011) (Grewell does not apply when relationship between insured and insurer breaks down); McConnell v. Farmers Ins. Co., Inc., 2008 WL 510392, at *2, No. 07-4180-CV-C-NKL (W.D. Mo. Feb. 25, 2008) (ordering insurer to disclose claims file contents created before formal denial of claim); Medical Prot. Co. v. Bubenik, 2007 WL 3026939, at *4, No. 4:06CV1639 ERW (E.D. Mo. Oct. 15, 2007) (documents created by insurer after insurer hired outside coverage counsel protected by work-product doctrine).  Captiva asserts that the relationship becomes adversarial only when the insurer formally denies an insured's claim, which has not yet occurred in this case.  However, Captiva filed suit against Lawyers Title in state court on April 9, 2010, and the parties' interests, at least with respect to coverage issues, have been adverse since that time.[5]  Any documents prepared by Lawyers Title or Fidelity thereafter are potentially protected by the work-product doctrine.

### B.     Fidelity's Assertion of Privilege

In general, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Rule 26(b)(1), Fed.R.Civ.P.  When a party withholds materials as privileged, it must "expressly make the claim," and

---

[5] Captiva alleged that Lawyers Title had failed to make a coverage determination within the time established by Missouri regulations and sought an order making that determination.  Captiva further alleged that it had not enjoyed marketable title by virtue of Lawyers Title's failure to provide coverage and sought compensation.  The action was removed to this district court, where it was dismissed without prejudice. Captiva Lake Investments, LLC v. Lawyers Title Insurance Corp., 4:10CV910 DJS, Order (E.D. Mo. July 16, 2010).

"describe the nature" of the withheld materials "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Rule 26(b)(5)(A). "A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work-product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Rule 26(b) advisory committee note (1993 amend.).

As the party asserting privilege, plaintiff Fidelity carries the initial burden of establishing the existence of a factual basis for the privilege. See Rabushka ex rel. U.S. v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997) (nonmovant met burden of proving factual basis for privilege when it produced privilege log). The party asserting the privilege "me[ets] its burden of providing a factual basis for asserting the privileges when it produce[s] a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its . . . counsel." Id. To constitute an acceptable privilege log, at a minimum, it should provide facts that would establish each element of the claimed privilege as to each document and identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Trudeau v. New York State Consumer Protection Bd., 237 F.R.D. 325, 334 (N.D.N.Y. 2006) (quotations and citations omitted). A party waives the attorney-client privilege and work-product protection when it fails to give notice in its privilege log that a document is being withheld based on a privilege or protection as required. Robinson v. Texas Auto.

Dealers Ass'n, 214 F.R.D. 432, 456 (E.D. Tex. 2003) ("If a party is allowed to withhold documents without giving opposing parties notice that the documents exist but are being withheld, the opposing party will obviously be unable to contest the validity of a privilege or protection asserted for those documents.") (reversed as to other documents) 2003 WL 21911333 (5th Cir. Jul 25, 2003).

Fidelity failed to include the Major Claims Reports in its initial privilege log, an omission for which it offers no explanation. It only included the reports in an updated log after Mark Dickhute revealed their existence at his deposition. Captiva was entitled to the opportunity to contest Fidelity's assertion of attorney-client privilege and work-product protection before it deposed Dickhute. Id. ("Amending the privilege log to fully disclose the scope of withheld documents after a motion to compel documents in the privilege log has already been filed is too late to serve that purpose. If the existence of all the documents that would be most enticing to the opposing party is not known, no motion to compel may ever be filed.") Fidelity has waived any claim of privilege with respect to the Major Claims Reports.

Fidelity listed only 10 pages of the CPS material in its privilege log and thus has waived protection for the remainder. As for those 10 pages, Fidelity identified them as a "Status Report" protected by the work-product doctrine. In order to protect work product, the party seeking protection must show that the materials were prepared in anticipation of litigation, *i.e.*, because of the prospect of litigation. PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002). There is no work-product immunity for documents prepared in the regular course of business rather than for purposes of litigation. Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987). Because "an insurer's business is to investigate claims that may or may not

result in litigation," Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 190 F.R.D. 532, 535 (S.D. Ind. 1999), "the application of the work product doctrine to documents prepared by insurance companies during claims investigation is difficult." U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co., 2000 WL 744369, at *9 (S.D.N.Y. 2000); see also St. Paul Reinsurance Co. Ltd. v. Commercial Financial Corp., 197 F.R.D. 620, 630 (N.D. Iowa 2000).  In this case, the privilege log fails to provide sufficient information to allow Captiva to evaluate Fidelity's claim that the materials were not created in the regular course of business.  Accordingly, the Court finds that Fidelity has waived protection for Bates FNT 4241-4250.

        C.     **Mark Dickhute's Deposition**

Captiva challenges eight assertions of attorney-client privilege Fidelity made during Mark Dickhute's deposition.  Based on the document disclosure the Court orders today, objections posed to questions regarding information in CPS and the Major Claims Reports are moot.  In addition, Dickhute responded to several of the questions by stating that he did not have any information and thus the objections are irrelevant.  Dickhute's communications with outside counsel regarding the scope of coverage (p. 139-40 and 169-70) are privileged.  Captiva's request to compel further testimony will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Captiva Lake Investments, LLC to compel [Doc. #91] is **granted** with respect to the production of documents.  Plaintiff Fidelity National Title Insurance Company shall produce the materials in the CPS and the Major Claims Reports relevant to the defendant's claim no later than **September 4, 2012**.

**IT IS FURTHER ORDERED** that the defendant's motion is **denied** with respect to compelling testimony.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 17th day of August, 2012.