UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:10-CV-1890 (CEJ) |
| CAPTIVA LAKE INVESTMENTS, LLC, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross motions for partial summary judgment. Upon review of the parties' briefs, the Court concludes that factual determinations preclude summary judgment on the parties' claims. However, the Court will address some of the parties' arguments regarding interpretation of the policy.

This dispute concerns the availability of coverage under a loan policy of title insurance (loan policy) issued in conjunction with a development project. The loan policy was issued by Lawyers Title Insurance Company (Lawyers Title) to National City Bank to protect the priority of the bank's interest in a deed of trust. Plaintiff Fidelity National Title Insurance Company (Fidelity) is the successor by merger to Lawyers Title. Defendant Captiva Lake Investments, LLC (Captiva), claims coverage under the policy as a successor or assignee of National City Bank. Captiva asserts that Fidelity must provide defense and indemnification with respect to various mechanics' liens and for unmarketability of title that Captiva asserts arises from the liens. Fidelity asserts that it has provided a defense for the mechanics' liens, that a policy exclusion bars coverage, and that the policy does not provide coverage for Captiva's alleged

unmarketability of title. Both parties bring claims for declaratory judgment; Captiva additionally brings claims for breach of contract and tortious interference.

I. **Background**

On March 13, 2006, National City Bank agreed to loan Majestic Pointe Development Company, LLC, (Majestic Pointe) $21,280,000 for completion of a condominium project. Majestic Pointe executed a deed of trust in favor of National City Bank, which purchased title insurance to insure the priority of its interest in the deed of trust. Lawyers Title issued a loan policy on March 15, 2006. [Doc. #1-1]. National City Bank subsequently increased the amount of its loan to Majestic Pointe and, on October 25, 2007, an amended deed of trust reflecting the increased loan amount was recorded. Lawyers Title issued a Modification Endorsement to the policy that increased the loan insurance amount to $22,380,00.00 and amended the date of the policy to October 25, 2007. [Doc. #1-2]. No other changes material to this dispute were made to the policy.

The construction project ran into difficulties and, starting in April 2008, several mechanics' liens were filed. In mid-2009, National City sold Majestic Pointe's loan to defendant Captiva which subsequently foreclosed on the property. On July 29, 2009, Captiva made a claim under the policy, demanding that Lawyers Title provide a defense against the mechanics' liens and pay any resulting claims. [Doc. #2-4]. On October 1, 2009, Lawyers Title notified Captiva that it would provide a defense, subject to a reservation of its right to later deny coverage under the policy. [Doc. #2-5]. Lawyers Title retained the law firm of Sauerwein, Simon & Blanchard (SSB) as counsel to defend Captiva in the mechanics' liens actions. The claims of six contractors have been

decided in Captiva's favor, five claimants have obtained a judgment against Captiva, and the status of several more liens is not apparent from the record.

On November 3, 2009, Captiva entered into an agreement to sell the property to a third party. It was a condition of the sale that Lawyers Title agree to issue a lender's policy of title insurance with full mechanics' lien coverage without exception for liens on the property prior to Captiva's acquisition of the property, or provide affirmative insurance coverage for the mechanics' liens. [Doc. #184-10]. Lawyers Title refused to commit to issuing the coverage. Id. On November 17, 2009, the buyer notified Captiva that it would not complete the purchase of the property. [Doc. #184-11]. On August 3, 2010, Captiva submitted a claim for unmarketability of title. Captiva alleges that it is unable to sell or obtain a loan on the property, due to the uncertainty created by the question of coverage for the pending mechanics' liens. J. Barnes letter [Doc. #2-6].

Additional facts will be provided as necessary.

II.     **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III. Discussion

Under Missouri law, which applies in this diversity case, the rules governing the interpretation of insurance policies are well settled. Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 77 (Mo. 1998) (*en banc*). A court must apply the general rules of contract construction when interpreting an insurance policy, because insurance policies are contracts. Todd v. Missouri United Sch. Ins. Council, 223 S.W.3d 156, 160 (Mo. 2007) (*en banc*). If the language in an insurance contract is clear and unambiguous, the court must construe the contract as written. Wasson v. Shelter Mut. Ins. Co., 358 S.W.3d 113, 120 (Mo. Ct. App. 2011) (quotation marks and citation omitted). The words of a policy are given their ordinary meaning unless it is obvious that a technical meaning was intended. Gateway Hotel Holdings, Inc. v. Lexington Ins. Co., 275 S.W.3d 268, 275-76 (Mo. Ct. App. 2008) (citation omitted). The policy "must be given effect according to the plain terms of the agreement, consonant with the reasonable expectations, objectives and the intent of the parties." Id. (citation omitted).

Where no ambiguity exists in the contract, the court enforces the policy as written. Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. 1993) (*en banc*); see also Black & Veatch Corp. v. Wellington Syndicate, 302 S.W.3d 114, 125 (Mo. Ct. App. 2009) ("Unless the insurance policy is ambiguous, the intent of the parties is determined based on the contract alone, and not based on extrinsic or parol evidence."). An insurance policy is ambiguous when the language of the policy is susceptible to multiple interpretations and its meaning is uncertain. Green v. Penn-America Ins. Co., 242 S.W.3d 374, 383 (Mo. Ct. App. 2007) (citation omitted). Ambiguous language is construed against the insurer. Peters, 853 S.W.2d at 302. Where an insurer seeks to avoid coverage under a policy exclusion, it has the burden of proving the applicability of the exclusion. Heringer v. American Family Mut. Ins. Co., 140 S.W.3d 100, 103 (Mo. Ct. App. 2004).

A. **Unmarketability of Title**

Captiva asserts that the pendency of mechanics' liens renders its title to the property unmarketable and claims coverage under the policy.

The policy states:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B[,] AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE . . . insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

\* \* \*

3.  Unmarketability of the title;

\* \* \*

"Unmarketability of title" is defined as:

> [A]n alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition regarding the delivery of marketable title.

[Doc. #1-1].

Fidelity asserts that the policy only covers unmarketability of title that arises from conditions that existed before October 25, 2007, the amended policy date. Generally, title insurance operates to protect a purchaser or mortgagee against defects in or encumbrances on title which are in existence at the time the insured takes title. Firstland Village Associates v. Lawyer's Title Ins. Co., 284 S.E.2d 582, 583 (S.C. 1981). Thus, title insurance differs from most other types of insurance because it seeks to eliminate risk of loss arising from past events, rather than assuming risk of loss for future events and then distributing the risk among policyholders. Crossman v. Yacubovich, 290 S.W.3d 775, 779 (Mo. Ct. App. 2009) (citation omitted); Ruisi v. Connecticut Attorneys Title Ins. Co., No. FSTCV125013845S, 2012 WL 3854407, *2 (Conn. Super. Aug. 3, 2012) (title policy "is unique in that it is retrospective, not prospective" and "is designed to protect against past events, not possible future encumbrances."). While insurers will be liable under most types of insurance policies only for matters arising after the policy was issued, a title insurer will not be liable if the defect, encumbrance or other matter for which the plaintiff is seeking benefits came into being only after the issuance of the policy.[1] Id. ; Evelyn I. Rechtzigel Trust v. Fidelity Nat'l Title Ins. Co. of N.Y., 748 N.W.2d 312, 320 (Minn. Ct. App. 2008) ("The

---

[1]While post-policy defects are generally excluded from coverage, there is a limited exception for mechanics' liens. 5 New Appleman on Insurance § 54.01[3][d][i]. Policies issued to lenders in conjunction with constructions loan may protect against loss of a security interest resulting from mechanics' liens. § 54.01[1][d].

-6-

risk of coverage is retrospective; only the discovery of the defect is usually prospective.")

Consistent with these principles, the loan policy in this case contains a provision that explicitly excludes coverage for loss or damage arising from defects that attach or are created subsequent to the date of the policy:

> The following matters are expressly excluded from the coverage of this Policy and [Fidelity] will not pay loss or damage, costs, attorneys' fees, or expenses which arise by reason of:
>
> * * *
>
> 3. Defects, liens, encumbrances, adverse claims or other matters . . . (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material).

Thus, Captiva must show that the condition causing the defect in marketability (*i.e.*, mechanics' liens) occurred before October 25, 2007. Fidelity states that the mechanics' liens were recorded after October 25, 2007, and thus there is no coverage for unmarketability. Captiva counters that, under Missouri law, unrecorded mechanics' liens affect title.

Section 429.010, Mo. Rev. Stat., provides the circumstances in which a mechanic's lien attaches. It states, in relevant part:

> Any person who shall do or perform any work or labor upon land . . ., upon complying with the provisions of sections 429.010 to 429.340, shall have for his or her work or labor done . . . a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated . . . to secure the payment of such work or labor done.

§ 429.010.1.

Once a mechanic's lien arises under § 429.010, it must be filed properly with the relevant county's circuit clerk to be enforceable. § 429.080. However, "filing a mechanic's lien is irrelevant for the purpose of determining first-in-time priority between competing encumbrances on real property." Bob DeGeorge Associates, Inc. v. Hawthorn Bank, 377 S.W.3d 592, 598 (Mo. 2012) (*en banc*). The "first spade rule" under § 429.060[2] gives the mechanic's lien relation-back priority to the date when work commenced so long as the lien arises on the land and is filed properly. Id. Under Missouri law, the mechanics' liens in this case "relate back" to the commencement of construction, a date which precedes October 25, 2007.

Fidelity argues that, under Missouri law, mechanics' liens do not encumber title until they are filed. In support, Fidelity cites Goodner v. Mosher-Roe Abstract & Guaranty Co., 282 S.W. 698, 699 (Mo. 1926), in which the Missouri Supreme Court stated that a mechanic's lien "does not take tangible form as an incumbrance against real estate until set forth in a document, verified and filed in conformity with statutory provisions." However, the lien at issue in Goodner was not filed in the proper office as designated by statute. Here, there is no dispute that the mechanics' liens were properly filed and Goodner is inapplicable.

Fidelity also cites Realty Sav. & Inv. Co. Washington Sav. & Bldg. Ass'n, 63 S.W.2d 167 (Mo. Ct. App. 1933). In Realty, the plaintiff was the holder of a second deed of trust. The defendant, who held the first deed of trust, foreclosed on the mortgaged property and used the excess proceeds to pay for labor and materials to

---

[2]"The lien for work and materials . . . shall be preferred to all other encumbrances which may be attached to or upon such buildings, bridges or other improvements, or the ground, or either of them, subsequent to the commencement of such buildings or improvements." Mo. Rev. Stat. § 429.060.

persons who were entitled to file mechanics' liens against the property but who had not yet done so. Id. at 167-68. Defendant was aware of the debt secured by the second deed of trust. In this circumstance, the state court rejected defendant's contention that the potential mechanics' liens constituted an encumbrance on the title that took priority over the second deed of trust. Id. "A claim may be developed into a lien upon compliance with the law, but the mere possibility that it may become a lien does not make it a lien." Id. at 170. Again, in the present case, the mechanics' liens were filed and the principle for which Fidelity cites Realty does not apply.

"[T]he right of a mechanic to file a lien at the time a conveyance is made, is an incumbrance within the meaning of a covenant against incumbrances." Duffy v. Sharp, 73 Mo. App. 316, 322, 1898 WL 1925 (Mo. Ct. App. 1898) (rejecting argument that claim arising from mechanic's lien is "too remote" until lien is filed). On October 25, 2007, Lawyers Title insured National City Bank's priority interest in the deed of trust. Fidelity does not cite any provision of the October 25, 2007 endorsement that excludes coverage for mechanics' liens arising from work that was commenced before that date. If contractors had a right to file liens as of that date, any subsequently-filed liens related back by operation of § 429.060.

The Court is not persuaded by the argument Fidelity has presented here against Captiva's claim for coverage for unmarketable title. Nonetheless, the Court has been unable to locate any cases finding an insurer liable for unmarketability arising from mechanics' liens under similar circumstances and thus is not persuaded that the coverage is available. Captiva cites Guernsey Bank v. Milano Sports Enterprises, LLC, No. 09AP-1015, 2011 WL 1780911 (Ohio Ct. App. May 5, 2011), in which the court held that the insured was entitled to recover the costs it incurred to maintain property

it was unable to sell during the pendency of litigation, a situation which Captiva describes as analogous to the present case. However, the damages in <u>Guernsey</u> were awarded for a period of time that began when the trial court ordered the insurer to provide coverage and ended when the insurer finally cleared the title. The Court rejects Captiva's assertion that, under <u>Guernsey</u>, an insured is entitled to all consequential damages, including for unmarketabilty, that arise before the insurer's obligations have been determined. Assuming, without deciding, that coverage is available, whether Captiva's title is unmarketable is a factual determination to be made at trial.

### B. <u>Mechanics' Liens Coverage</u>[3]

Sixteen contractors filed mechanics' liens arising from their work on the Majestic Pointe development. The claims of six contractors have been decided in Captiva's favor. On September 19, 2012, judgment was entered in favor of five lien claimants, for an amount in excess of $900,000. <u>Grau Contracting, Inc. v. National City Bank et al.</u>, No. 08CM-CC00412 (26th Judicial Circuit Sept. 19., 2012). Fidelity has filed an appeal of the judgment.

#### 1. <u>Exclusion 3(a)</u>

Fidelity has reserved its right to determine that coverage of the lien claims is barred by exclusion 3(a), which bars coverage for losses that arise by reason of "[d]efects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant."

The construction loan agreement between National City and Majestic Pointe specified that loan proceeds would be disbursed on a periodic basis. Construction Loan

---

[3]The loan policy provides coverage for mechanics' liens at Insuring Provision 7.

Agreement, Art. 6 [Doc. #1-4]. As a condition of each disbursement, Majestic Pointe was required to submit lien waivers for "all work done on the Premises, to a reasonably current date, otherwise paid for or to be paid for by the Borrower." § 6.3(e). Fidelity asserts that National City advanced some loan proceeds without obtaining lien waivers as an accommodation to Majestic Pointe. Without the lien waivers, Fidelity argues, National City could not know that the contractors were being paid and thus "created" a risk that mechanics' liens would be filed. Fideilty asserts exclusion 3(a) applies and bars coverage for the liens. Captiva asserts that, as a matter of law, the exclusion does not apply to National City's alleged conduct.

Missouri law strictly construes exclusionary clauses against the insurer, who bears the burden of showing the exclusion applies. Burns v. Smith, 303 S.W.3d 505, 510 (Mo. 2010). "The 'created or suffered' exclusion is a standard one in title insurance contracts, and it is apparently '[o]ne of the most litigated' clauses in the field." Home Fed. Sav. Bank v. Ticor Title Ins. Co., 695 F.3d 725, 732 (7th Cir. 2012) (quoting Joyce Palomar, 1 Title Ins. Law § 6:10). The Eighth Circuit has held that the exclusion is ambiguous and must be strictly construed against the insurer. Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 907 (8th Cir. 1995).

The "created or suffered" language is intended to protect the insurer from liability for matters caused by the insured's own intentional misconduct, breach of duty, or otherwise inequitable dealings. Id.

> The cases discussing the applicability of the "created or suffered" exclusion generally have stated that the insurer can escape liability only if it is established that the defect, lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured or the insured either expressly or impliedly assumed or agreed to the defects or encumbrances in the course of purchasing the property involved. The courts have not permitted the insurer to avoid liability if the insured was

innocent of any conduct causing the loss or was simply negligent in bringing about the loss.

Brown v. St. Paul Title Ins. Co., 634 F.2d 1103, 1107–08 n. 8 (8th Cir. 1980); see also Home Fed. Sav. Bank, 695 F.3d at 733 ("clear majority" of courts hold that exclusion applies only to "intentional misconduct, breach of duty, or otherwise inequitable dealings by the insured").

Three cases are relevant to the application of exclusion 3(a) to this case: Brown v. St. Paul Title Ins. Co., 634 F.2d 1103 (8th Cir. 1980), Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899 (8th Cir. 1995), and First Assembly Church of West Plains v. Ticor Title Ins. Co., 872 S.W.2d 577 (Mo. Ct. App. 1994). In Brown, the insured lender stopped making disbursements after the developer failed to make an interest payment. The disbursements were necessary to pay for completed work, so when the lender stopped making payments it was guaranteed that mechanics' liens would arise. See Chicago Title, 53 F.3d at 906 (discussing Brown). The Eighth Circuit held that the liens were created or suffered as a result of the lender's refusal to disburse funds necessary to pay for the work completed between the final disbursement and the developer's default. Brown, 634 F.2d at 1108-09. "To hold otherwise," the court said, "would give the insured an unwarranted windfall and would place the title insurer in the untenable position of guaranteeing payment for work for which the loan funds were never advanced." Id. at 1110.

The Eighth Circuit distinguished Brown in Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899 (8th Cir. 1995). The lender in Chicago Title took several steps to keep the construction project moving forward despite cost overruns. The lender gave up interest payments, distributed funds earmarked for future work to pay for completed work, and convinced the developer to use funds budgeted for its own

fees to pay subcontractors. Id. at 902. The lender ultimately expended more money than it had committed for the loan. Id. at 906. The insurer refused coverage for mechanics' liens under exclusion 3(a). The Eighth Circuit rejected the insurer's assertion that an insured "creates" liens whenever it fails to provide sufficient funds to complete a project. Unlike in Brown, the lender did not hold back funds; indeed, it eliminated some potential lien claims by advancing funds to pay for completed work. Id. Ultimately, the court determined that the lender "did not engage in affirmative misconduct or intentionally cause liens." Id. at 907. Though the lender may have used poor judgment or acted negligently, "[i]ts actions were not inequitable . . . and coverage would not [provide] an unwarranted windfall." Id. at 908 (citing Brown). Thus, the insurer failed to meet its burden of proving that the exclusion applied.

Fidelity acknowledges Brown and Chicago Title but argues that exclusion 3(a) applies where an insured commits an intentional, rather than inadvertent, act. In support, Fidelity cites First Assembly Church of West Plains v. Ticor Title Ins. Co., 872 S.W.2d 577 (Mo. Ct. App. 1994), in which the Missouri Court of Appeals held that "where the conduct which forms the basis for the claim is intentional and deliberate, as opposed to inadvertent or mistaken, the adverse claim will be considered as having been 'created' and therefore excluded under the policy." Id. at 583 (citing Safeco Title Ins. Co. v. Moskopoulos, 172 Cal. Rptr. 248, 253 (1981)). Fidelity reads the holding too broadly.

The named insured in First Assembly was a breakaway faction of a church that attempted to transfer the church's property to itself and then insure its interest in the title. When litigation over title to the church property ensued, the breakaway group made a claim for defense. The insurer refused, claiming that the claims flowed from

-13-

the insured's action in attempting to disassociate from the larger church and take control of the property in violation of the church's constitution and bylaws and contrary to the right of the proper authorities to control the affairs of the church. Id. at 583. It was against this background that the Missouri Court of Appeals held that exclusion 3(a) applied. The court found that the claims for which coverage was sought arose from the intentional, affirmative actions of the named insured. "Where the conduct which forms the basis for the claim is intentional and deliberate, as opposed to inadvertent or mistaken, the adverse claim will be considered as having been 'created' and therefore excluded under the policy." Id. at 583. The breakaway church's claims to the property arose from its violation of organizational documents or its affirmative action contrary to the supervision and control it authorized in those documents. Id. at 583-84.

The Court disagrees with Fidelity that First Assembly Church lowers its burden for establishing that exclusion 3(a) applies. The intentional act committed by the insured in First Assembly Church was the improper assertion of title to the property in the first instance. It thus "created" the adverse claim for which it sought coverage. In this case, the allegation is that the properly insured title holder may have created a risk of liens in the course of doing that which it was entitled to do -- disburse loan proceeds. Setting off a chain of events that results in mechanics' liens, without more, will not result in exclusion under 3(a). Barlow Burke, Law of Title Ins., § 4.04 (absent the insured's bad faith or a conspiracy to create the defect, the insured who is remote in a chain of events creating a defect, may still have the defect covered by the policy).

Exclusion 3(a) will apply if Fidelity can show "intentional misconduct, breach of duty, or otherwise inequitable dealings" by National City Bank, or that recovery for

individual lien claims would amount to an unwarranted windfall because National City received the benefit of the work reflected in the liens without disbursing payment.

2. <u>Breach of the duty to defend</u>

Assuming that coverage is not excluded, the parties dispute whether Fidelity has met its contractual obligations with respect to the liens.

Fidelity's defense obligations are set forth in the Conditions and Stipulations.

> 4. DEFENSE AND PROSECUTION OF ACTIONS . . .
>
> (a) Upon written request by the insured . . ., [Fidelity], at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. [Fidelity] shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action . . .
>
> (b) [Fidelity] shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish title to the estate or interest or the lien of the insured. [Fidelity] may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If [Fidelity] shall exercise its rights under this paragraph, it shall do so diligently.

Captiva alleges that Fidelity breached its duty to defend when it "refused to defend and maintained its reservation of rights." Missouri law permits an insurer to defend its insured while reserving the right to later disclaim coverage. <u>Truck Ins. Exch. v. Prairie Framing, LLC</u>, 162 S.W.3d 64, 88 (Mo. Ct. App. 2005) (citations omitted). The insured has the option of either accepting the insurer's defense under a reservation of rights or refusing such defense. <u>Id.</u>; <u>Brooner & Assoc. v. Western Cas. & Sur.</u>, 760 S.W.2d 445, 447 (Mo. Ct. App. 1988) (insurer does not waive any policy provisions if insured accepts defense subject to a reservation of its right to assert non-

liability "without protest and with full knowledge and passive acquiescence"). If the fully-notified insured accepts, the insurer's defense under a reservation of rights will not be considered a denial of coverage. Truck Ins. Exch., 162 S.W.2d at 88. Furthermore, the insurer is entitled to bring an action for declaratory judgment as to its obligation in the underlying litigation. Central Bank v. St. Paul's Fire & Marine Ins., 929 F.2d 431, 433 (8th Cir. 1991) (citing State ex rel. Mid–Century Ins. Co. v. McKelvey, 666 S.W.2d 457 (Mo. Ct. App. 1984)).

Captiva cites a number of cases to support its contention that Fidelity breached the contract by offering a defense subject to a reservation of rights. Ballmer v. Ballmer, 923 S.W.2d 365 (Mo. Ct. App. 1996); State ex rel. Rimco, Inc. v. Dowd, 858 S.W.2d 307 (Mo. Ct. App. 1993); Whitehead v. Lakeside Hosp. Ass'n, 844 S.W.2d 475 (Mo. Ct. App. 1992); State ex rel. Mid-Century Ins. Co. v. McKelvey, 666 S.W.2d 457 (Mo. Ct. App. 1984). These cases all involved an insurer's liability after an insured rejects the defense subject to reservation. See Ballmer, 923 S.W.2d at 369 (if insured rejects defense subject to reservation, insurer may represent the insured without a reservation, withdraw from representing the insured altogether, or file a declaratory judgment action to determine the scope of the policy.) Fidelity offered a defense of the mechanics' liens subject to a reservation of rights and there is no evidence that Captiva rejected that defense. Thus, the cited cases are inapplicable.

Fidelity asserts that it has fully satisfied its obligations with respect to the liens that were defeated and cites the following provision:

8. LIMITATION OF LIABILITY

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance . . . or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including

litigation and the completion of all appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

Multiple mechanics' liens were filed against the Majestic Pointe development and, while some have been defeated outright and others are being appealed, the status of the remainder is unclear. In addition, Captiva complains that Fidelity improperly limited the scope of the defense to Captiva's detriment. Under this circumstance, the Court finds that questions of fact preclude a determination on summary judgment that Fidelity has satisfied its obligations under the policy.

Captiva asserts additional claims that Fidelity determined that the policy did not afford coverage but concealed this determination from Captiva, thereby breaching its duty to Captiva, and that Fidelity tortiously interfered in Captiva's relationship with SSB. These claims will be taken up at trial.

Accordingly,

**IT IS HEREBY ORDERED** that the parties' cross motions for partial summary judgment [Docs. #180, #184] are **denied**.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of April, 2013.