UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:10-CV-1890 (CEJ) |
| CAPTIVA LAKE INVESTMENTS, LLC, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion for sanctions for spoliation of evidence and misrepresentation. Plaintiff has filed a response in opposition and the issues are fully briefed.

**I.  Background**

This dispute concerns the availability of coverage under a loan policy of title insurance issued in conjunction with a construction project. Defendant Captiva Lake Investments, LLC (Captiva) claims that it is entitled to defense and indemnification with respect to mechanics' liens and for unmarketability of title. Plaintiff Fidelity National Title Insurance Company (Fidelity) asserts that it has provided a defense for the mechanics' liens, that a policy exclusion bars coverage, and that the policy does not provide coverage for Captiva's alleged unmarketability of title. Both parties seek declaratory relief. Captiva additionally asserts counterclaims for breach of contract, vexatious refusal, and tortious interference.[1]

---

[1]Fidelity retained the firm of Sauerwein Simon & Blanchard (SSB) to represent Captiva in the mechanics' liens litigation. Captiva alleges that Fidelity instructed SSB to withhold information from Captiva and thwarted potential avenues of defense against the amount of the liens. In addition, Captiva claims that Fidelity refused to

This is Captiva's fourth discovery-related motion in a dispute that is now several years old. In May 2011, Captiva served requests for production of all documents related to its claims, triggering a lengthy negotiation over materials Fidelity claimed were protected under the attorney-client privilege and the work-product doctrine. In early 2012, Captiva became aware of two sets of materials that Fidelity had not produced or listed in its privilege log: materials in Fidelity's computer-based "Claims Processing System" (CPS) and monthly Major Claims Reports (MCRs).[2] In June 2012, Captiva filed a motion to compel production of these materials. After an *in camera* review, the court found that Fidelity had waived its attorney-client privilege and work-product protections to these materials by failing to properly include them in its privilege logs. The court directed Fidelity to produce the MCRs and materials in CPS no later than September 4, 2012. [Doc. #113].

Fidelity did not fully comply with the order -- it produced only partial information from CPS and failed to produce four MCRs from 2010. Accordingly, on September 17, 2012, Captiva filed a motion for sanctions, seeking dismissal of Fidelity's claims or, in the alternative, a forensic examination of its computer systems. Fidelity denied that its conduct was sanctionable and stated that it was consulting with a specialist to collect more data from CPS. On November 16, 2012, the court denied Captiva's motion for sanctions and ordered Fidelity to file a status report addressing the progress of its consultation with e-discovery specialists. [Doc. #177].

---

issue a formal denial of coverage in an effort to limit its potential liability in this action.

[2]Defendant deposed former claims handler Mark Dickhute on May 23, 2012. In the course of his testimony, he testified that he prepared MCRs every month. In addition to being new information for Captiva, counsel for Fidelity has attested that he did not know about MCRs before Dickhute's deposition. Briner Aff. ¶¶12-13 [Doc. #121-1].

The parties submitted cross-motions for summary judgment on January 14, 2013.[3] On February 7, 2013, Captiva filed a motion to compel production, stating that Fidelity concealed or withheld relevant documents, made unfounded privilege claims, and withheld documents until after depositions had been completed. Captiva also moved for the appointment of a specialist to examine Fidelity's computer system. After a hearing on April 23, 2013, the court appointed William A. Whitledge to inspect Fidelity's computer systems and directed the parties to develop a protocol for the inspection. [Doc. #229].

Mr. Whitledge completed his report on June 16, 2014. [Doc. #254-1]. His findings are summarized as follows: (1) as of the date of his report, Fidelity had not instituted a litigation hold, id. at 2; (2) Fidelity did not conduct a systematic search of its computer systems, including its email archive, for discoverable information before May 5, 2013, id. at 2-3; (3) in 2011 and 2012, a contractor lost as many as 13 million email messages while implementing an email retention program, id. at 4; (4) Fidelity was able to recover files on the computer assigned to former claims handler Mark Dickhute, but did not preserve any of his network share, id. at 4-5; and (5) new entries into the CPS overwrite existing data without retaining a copy and logs generated by the system are destroyed after a month, id. at 6-8.

II. Discussion

Captiva seeks sanctions pursuant to Fed.R.Civ.P. 37 and the court's inherent power, which includes the discretionary "ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991); see also Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 750 (8th Cir.

---

[3]The court denied both motions on April 22, 2013.

2004); Ameriwood Indus. v. Liberman, No. 4:06CV524DJS, 2007 WL 5110313, at *4 (E.D. Mo. July 3, 2007); Process Controls Int'l, Inc. v. Emerson Process Mgmt., 4:10CV645 CDP, 2011 WL 5006220 , at *5 (E.D. Mo. Oct. 20, 2011). Captiva alleges that Fidelity has engaged in spoliation of evidence, caused prejudicial delay in the production of evidence, and made egregious misrepresentations to the court.

### A.     Spoliation

A spoliation-of-evidence sanction requires "a finding of intentional destruction indicating a desire to suppress the truth." Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir. 2007) (quoting Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 746 (8th. Cir. 2004)). "Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." Greyhound, 485 F.3d at 1035 (quoting Morris v. Union Pac. R.R., 373 F.3d 896, 902 (8th Cir. 2004)). An explicit finding of bad faith is not required to impose sanctions on a party that destroys specifically-requested evidence after litigation has commenced. Gallagher v. Magner, 619 F.3d 823, 845 (8th Cir. 2010) (quoting Stevenson, 354 F.3d at 749-50). The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation. E*Trade Sec. LLC v. Deutsche Bank AG, 230 F.R.D. 582, 588 (D. Minn. 2005).

Fidelity did not issue a litigation hold with respect to Captiva's claims, though the record establishes that it does issue holds in some instances. See Pl. Ex. B, Grube Aff. [Doc. #269-2]; Pl. Ex. J, Dec. 15, 2011 Memorandum regarding "legal hold" process. Fidelity asserts that a litigation hold was unnecessary here because it has a "document

collection procedure." See Pl. Ex. F "Major Claims Department Document Collection Procedures" [Doc. #269-6] (for each claim, MCD staff retain hard copies of documents in physical file, and emails and electronic documents in separate electronic folders). The mere existence of a procedure is insufficient to satisfy Fidelity's obligations to preserve discoverable evidence, if it does not actually preserve evidence. See E*Trade, 230 F.R.D. at 589 ("When litigation is imminent or has already commenced, 'a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy.'") (quoting Stevenson, 354 F.3d at 749). As discussed below, the failure to impose a litigation hold resulted in the deletion of unknown numbers of emails. The court finds that Fidelity's failure to implement a litigation hold establishes the necessary intent to support the imposition of sanctions. See Doe v. Norwalk Cmty. Coll., 248 F.R.D. 372, 378-79 (D. Conn. 2007) (defendants subject to sanctions for loss of electronic information when they failed to issue litigation hold); E*Trade, 230 F.R.D. at 592 (imposing sanctions where company failed to issue litigation hold on emails in reliance on its backup tapes, which it then destroyed pursuant to retention policy); Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 221 (S.D.N.Y. 2003) (defendant's failure to include backup tapes in preservation order after onset of litigation was sanctionable).

There must be a finding of prejudice to Captiva before the court can impose a sanction for destruction of evidence. Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 460 (8th Cir. 2013) (citing Stevenson, 354 F.3d at 746). Captiva asserts that it has been prejudiced by the loss of three categories of evidence.

### 1. Emails

After this litigation commenced, a contractor for Fidelity caused two mass deletions of emails while trying to institute a company-wide email retention policy. On September 13, 2011, nearly 8,000,000 unique emails covered by legal holds were deleted. Grube Aff. ¶19. This incident did not result in the loss of information discoverable in this case because all of the deleted emails predated September 13, 2006, well before Captiva submitted its claim for coverage on July 29, 2009. Id. at ¶ 21. However, between December 13, 2011, and July 22, 2012, Fidelity began deleting emails that were older than 180 days and that were not covered by legal holds. Id. at ¶¶22, 27. As noted, there was no litigation hold with respect to Captiva's claim, resulting in the probable loss of discoverable emails sent or received by claims handlers Mark Dickhute, Gregory Dawley,[4] and more than a dozen other employees who were involved with the Captiva claim. See Def. Reply at 10 n.6 (listing employees outside the Major Claims department who worked on the Captiva claim) [Doc. #275].

Fidelity asserts that Captiva was not prejudiced by the loss of emails, because it still has nearly 33,000 emails sent or received by Dickhute and 1,900 sent or received by Dawley before December 23, 2011. Pl. Ex. G, Williams Aff. ¶8 [Doc.#269-7]. The fact that Fidelity retained *some* emails from the deletion period is meaningless because Fidelity does not know the quantity or contents of emails that were deleted. See Process Controls, 2011 WL 5006220, at *6 (while remaining evidence "may be an accurate representation of the documents that were destroyed, there is simply no way to tell."); Ameriwood Indus., Inc. v. Liberman, 4:06CV524DJS, 2007 WL 5110313, at *7 (E.D. Mo. July 3, 2007) ("The fact that plaintiff cannot show exactly

---

[4]Gregory Dawley took over the Captiva claim in November 2012. Dawley Aff. ¶17 [Doc. #121-9].

information and documents were destroyed, as defendants argue, is precisely the problem.")

Captiva has demonstrated that discoverable communications occurred via email. For example, on May 4, 2011, Dickhute emailed coverage counsel Jay Levitch, discussing matters relevant to the defense of the mechanics' liens.[5] Def. Ex. 10 [Doc. #257-10]. The material in this email is relevant to Captiva's tortious interference and vexatious refusal claims and supports its contention that other discoverable material was lost. The court finds that Captiva was prejudiced because the loss of the emails "impaired [Captiva's] ability to go to trial or threatened to interfere with the rightful decision of the case." Apple Inc. v. Samsung Electronics Co., 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) (citing Leon v. IDX Systs.Corp., 464 F.3d 951, 959 (9th Cir. 2006)). Appropriate sanctions will be discussed below.

### 2. CPS

CPS is a database system developed in-house by Fidelity's software developers. Whitledge Rept. at 6; Pl. Ex. A, Miller Aff. ¶¶ 22-23 [Doc. #269-1]. It is a "single state system" that tracks only current data for a claim and does not keep historical data.[6]

---

[5]Communications with coverage counsel are generally privileged and Fidelity asserts that disclosure of this document was inadvertent and demands its return. However, Fidelity has been on notice since September 4, 2013, that it had produced email messages from coverage counsel. Def. Ex. 1 [Doc. #275-1]. Fidelity did not respond to this notification by requesting return of any privileged documents that were inadvertently disclosed, nor has it sought relief from the court. Thus, any claim that the document is privileged has been waived by the failure to timely act. See Fed.R.Evid. 502(b) (inadvertent disclosure does not result in waiver if holder of privilege "promptly took reasonable steps to rectify the error.")

[6]Some Captiva entries in CPS have not been changed since they were entered. See Han Aff. ¶¶ 9-12, 16-17 (text for "coverage brief" screen unchanged since entry). The text in other fields can be revised or deleted, but the original author's name and date stamp remain. Id.

Rini Suppl. Aff. ¶4 [Doc. #178-2].  While changes in CPS data are logged, the logs are destroyed after a month.  Whitledge Rept. at 7.

Fidelity creates a file in CPS for every claim.  Dawley Aff. ¶8 [Doc. #98-1].  Several "screens" or "buttons" are available within each claim file; *e.g.*, "Analysis," "Tasks," "Liens." Rini Aff. ¶ 7 [Doc. #121-6]; Han Aff. ¶¶ 7, 13, 19 [Doc. #269-5].  CPS assists the claims handlers in their preparation of MCRs, but the reports are not recorded within CPS.  Whitledge Rept. at 6.  Documents stored outside CPS can be linked to claims in CPS.  Han Aff. ¶¶ 26-27, 31.

Captiva complains that Fidelity allows data in CPS to be constantly overwritten, thereby destroying discoverable evidence.  Captiva fails to identify a category of evidence that was available only through CPS and has been lost.  For example, MCRs and emails (other than those deleted in 2012) have been produced through other means.  Captiva cites an email dated February 9, 2012, indicating that the agency contract between Fidelity's predecessor and LandChoice Company LLC was "uploaded to CPS Doc Manager" in the Captiva claim.  Def. Ex. 12 [Doc. #257-12].  Captiva claims that this document was not produced and presumably was deleted from CPS.  However, Young Han, Fidelity's Legal Systems Developer, attests that the agency contract is still located in CPS Documents Manager.  Han Aff. ¶30.

Rule 37(e), Fed.R.Civ.P., provides that, "[a]bsent exceptional circumstances, a court may not impose sanctions . . . on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system."  As the rules committee explained, "[m]any steps essential to computer operation may alter or destroy information, for reasons that have nothing to do with how that information might relate to discovery."  Committee note to 2006

amendment. The potential overwriting of data that defendant complains about here is part of the routine operation of CPS. There is no indication that Fidelity could have preserved relevant CPS data without significant intervention in a major computer system. While "the advent of litigation may require intervention to alter the operation of a [computer information] system to prevent loss of discoverable information[,] . . . attempting to prevent all overwriting or deleting of electronically store information . . . might cripple a computer system." 8B Charles Alan Wright *et al.*, Federal Practice and Procedure § 2284.1 (3d ed.). In the absence of a compelling claim that relevant evidence was lost, the Court declines to sanction Fidelity for its failure to preserve CPS data.

### 3. Mark Dickhute's files

Dickhute was required to maintain separate electronic folders for the Captiva claim. Pl. Ex. F at p.4. His electronic files were copied and stored in 2011, when he changed positions, and in 2012 when he left the company. Pl. Ex. C, Goosen Aff.¶¶ 8, 12 [Doc. #269-3]. There is no evidence that electronic documents in Dickhute's control on the day he left the company were deleted. Captiva argues that, without a litigation hold, Dickhute was free to alter or delete records before his departure. In the absence of any evidence that Dickhute destroyed records, any claim of prejudice is entirely speculative.

### B. Prejudicial Delay

Captiva argues that it has been harmed by Fidelity's failure to timely produce discoverable documents.

Captiva made its first request for documents in May 2011. Fidelity did not inform Captiva of the existence of MCRs by either producing them or listing them in a

privilege log and Captiva first learned of MCRs at Dickhute's deposition in May 2012. It then filed a motion to compel production. On August 17, 2012, the court ordered Fidelity to produce MCRs not later than September 4, 2012. On September 17, 2012, Captiva filed a motion for sanctions based in part on Fidelity's failure to produce MCRs for four months in 2010.

Fidelity vigorously opposed Captiva's sanctions motion, calling it unwarranted at best and in bad faith at worst. [Doc. #121]. With respect to the failure to turn over all MCRs, Fidelity's counsel Shawn Briner explained that he was unaware of their existence before Dickhute's deposition on May 23, 2012. Following the deposition, counsel searched for and located several reports. These were provided to the court for *in camera* review. Briner Aff. ¶¶ 12-13 [Doc. #121-1]. On September 4, 2012, Fidelity gave Captiva all the reports it had produced to the court. Id. at ¶24. On September 7th, Captiva informed Mr. Briner that reports were missing and he undertook another search. Id. at ¶¶25-26.

Dickhute's successor, Gregory A. Dawley, did know about MCRs because he produced his own every month, but he assumed that Dickhute had produced all discoverable materials in his possession. After Dickhute's deposition in May 2012, Dawley gathered as many electronic copies of Dickhute's reports as he could find. Dawley Aff. ¶16. He asked administrator Helen Hammond to search for additional reports but she did not find any in the archives she could access.[7] She thought Dickhute might not have completed MCRS every month and Dawley decided that this adequately explained the missing reports. Although Dawley had received Dickhute's

---

[7]Electronic copies of the missing MCRs were eventually located in an archive which Hammond could not access. Dawley Aff. ¶21.

-10-

paper files, he did not examine them until September 2012, at which point he found excerpts of some of the missing reports and several pages of handwritten notes. On September 18, 2012, Dawley turned the paper files over to Fidelity's counsel. He then made further inquiries to locate additional electronic copies of the missing reports, which were found in a previously unsearched archive. Dawley Aff. ¶¶ 6, 16-21 [Doc. #124-1]. Captiva finally received all MCRs in May 2013, see Pl. Ex. I, Correspondence dated May 28, 2013 (September 2010 MCR to be produced) [Doc. #269-9], three months after the parties' summary judgment motions were fully briefed.

Fidelity argues that Captiva cannot establish it was prejudiced by any delay in production of MCRs and other documents. The court disagrees. First, Fidelity disclosed 40,000 pages of new documents after April 2013.[8] Fidelity contends that 75% of the "new" pages are duplicates, impertinent or immaterial; even crediting that estimate, that means that there are approximately 10,000 new pages to be scrutinized. Second, in November 2013, Fidelity produced a document that would have been helpful to Captiva's summary judgment motion. Def. Ex. 8, Dawley Nov. 5, 2012 memorandum requesting counsel [Doc. #257-8].[9] Fidelity asserts that this document would not have altered the outcome of the parties' summary judgment motions because the court's order was consistent with Captiva's construction of the document. The court does not intend to reanalyze the summary judgment issues, but the

---

[8]In its reply memorandum, Captiva states that it just received approximately 1 million additional pages and that 150,000 pages of documents were added to Fidelity's privilege log. Reply at pp. 8-9 [Doc. #275]. Fidelity asserts that 97% of the new documents consist of duplicates and largely-redacted multipage spreadsheets. [Doc. #279].

[9]The memorandum includes information regarding the absence of certain required exceptions from the issued policy.

memorandum could have aided the court with respect to its analysis of coverage issues, and may have been relevant to Captiva's vexatious conduct and tortious interference claims, consideration of which the court deferred until trial. The court finds that Fidelity's unexcused delay in producing relevant documents caused prejudice to Captiva.

C. Misrepresentations

Fidelity asserted in September 2012 that it had done "everything possible" to find discoverable material and made similarly inaccurate statements in subsequent filings. Captiva characterizes these statements as egregious misrepresentations. The court disagrees. It is evident that the discovery debacle arose in large part because Fidelity's counsel was not aware of discovery materials in Dickhute's possession until May 2012. The court finds that Fidelity's statements were the product of its incomplete grasp of its own documents.

In summary, the Court finds that Fidelity is subject to sanctions for failing to secure emails relevant to the Captiva claim and for prejudicial delay in production of discoverable material.

D. Sanctions

The type of sanctions available for spoliation include entry of default judgment, an adverse inference instruction to the jury, exclusion of evidence, and the imposition of the prejudiced party's attorneys' fees or other monetary sanction. <u>Am. Builders & Contractors Supply Co. v. Roofers Mart, Inc.</u>, 1:11-CV-19 CEJ, 2012 WL 2992627, at *3 (E.D. Mo. July 20, 2012). Captiva asks the court to strike Fidelity's pleadings, issue an adverse inference instruction, and order Fidelity to pay its attorneys' fees and costs associated with Mr. Whitledge's inspection.

"This court 'is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances.'" Liberman, 2007 WL 5110313 at *4 (quoting Chrysler Corp. v. Carey, 186 F.3d 1016, 1022 (8th Cir. 1999)). Although a finding of bad faith "is not always necessary to the court's exercise of its inherent power to impose sanctions," there must be a finding of "intentional destruction indicating a desire to suppress the truth" in order to dismiss a claim. Process Controls, 2011 WL 5006220, at *7 (citing Stevenson, 354 F.3d at 745, and quoting Menz. v. New Holland N. Am., Inc., 440 F.3d 1002, 1006 (8th Cir. 2006)).

Dismissal is not an appropriate sanction in this case. "The sanction of striking pleadings should be used sparingly because in this system of justice the opportunity to be heard is a litigant's most precious right." Id. (internal quotations and citations omitted). "There is a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court." Id. (citation omitted). Such a drastic sanction is typically reserved for the most egregious offenses. See, e.g., Liberman, 2007 WL 5110313 (defendant deleted computer hard drives that were subject of litigation); Global Traffic Techs., LLC v. Tomar Elecs., Inc., No. 05–756, 2007 WL 4591297 (D. Minn. Dec. 27, 2007) (defendant repeatedly violated court orders, despite having been sanctioned on four previous occasions in the case); Ashton v. Knight Transp., Inc., 772 F. Supp. 2d 772 (N.D. Tex. 2011) (defendants intentionally destroyed evidence that was "critical" to the case and litigation was reasonably foreseeable). The spoliation in this case does not rise to such a level.[10]

---

[10]The court is mindful that Captiva received privileged documents it otherwise would not have obtained, but for Fidelity's mishandling of discovery.

Captiva also asks for a sanction in the form of an adverse inference instruction. An adverse inference instruction for "the ongoing destruction of records during litigation" is allowed "even absent an explicit bad faith finding." Stevenson, 354 F.3d at 750. Here, Fidelity implemented an email retention program that deleted emails after litigation commenced and, thus, a finding of bad faith is not required. Accordingly, the court will instruct jurors that they may, but are not required to, assume the contents of the deleted emails would have been adverse to Fidelity. The court will also allow Fidelity an opportunity to put on rebuttal evidence "as an innocent explanation for its conduct." Id.

Captiva also seeks an award of its attorneys' fees and costs associated with bringing its sanctions motions, including all costs associated with Mr. Whitledge's services. While Fidelity asserts that Captiva has not suffered significant prejudice, it concedes that its handling of discovery issues culminated in Mr. Whitledge's appointment and it stands ready to pay a portion of Mr. Whitledge's fees, subject to an opportunity to review the reasonableness of those fees. The court believes that this is an appropriate sanction. In determining the proportion of inspection costs Fidelity should pay, the court is mindful that the inspection resulted in the production of a comparatively modest number of new documents, none of which amounts to a "smoking gun." On the other hand, the inspection revealed that Fidelity deleted emails, failed to institute a litigation hold, and delayed completing a comprehensive search of its electronic files, events which Captivity and the court would not have known about but for the inspection. Thus, the court will require Fidelity to pay one-half of the reasonable costs of the inspection. In light of the prejudicial delay caused by Fidelity's mishandling of discovery, the court will also require it to pay Captiva's

reasonable attorneys' fees associated with bringing this sanctions motion. Fed.R.Civ.P. 37(b)(2).

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for sanctions [Doc. #257] is **granted**.

**IT IS FURTHER ORDERED** that defendant shall have until **February 10, 2015**, to file verified statements of the attorneys' fees defendant incurred in bringing the instant motion for sanctions and the costs associated with Mr. Whitledge's inspection.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 7th day of January, 2015.