IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FIDELITY NATIONAL TITLE                    )
INSURANCE COMPANY, SUCCESSOR- )
BY-MERGER TO LAWYERS TITLE          )
INSURANCE CORPORATION,                   )          Case No.4:10-cv-01890-CEJ
                                                         )
     Plaintiff,                                      )
                                                         )
vs.                                                      )
                                                         )
CAPTIVA LAKE INVESTMENTS, L.L.C., )
                                                         )
     Defendant.                                   )

## FIDELITY'S MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF CAPTIVA'S EVIDENCE AND SUGGESTIONS IN SUPPORT

Captiva has the burden of providing a legally sufficient evidentiary basis for its causes of action for tortious interference, breach of contract, vexatious refusal and declaratory judgment. Yet, after presenting its evidence at trial, it has failed to carry its burden. As a result, pursuant to FED. R. CIV. P. 50 and Local Rule 7-4.01, Fidelity is entitled to judgment on these claims as a matter of law. With respect to Captiva's tortious interference claim:

(1) Captiva failed to adduce any evidence that but for the alleged actions of Fidelity, the mechanics' lien cases would have concluded with a different result;

(2) Captiva failed to adduce any evidence of conduct separate and apart from Fidelity's alleged failure to fulfill its contractual obligations, a pre-requisite to viability of its tort claim;

(3) the evidence presented by Captiva established that Fidelity was a party to the same attorney client relationship with Sauerwein, Simon and Blanchard ("SSB"); and

(4) the evidence established that Fidelity retained the right to control the defense of claims against Captiva and did not employ improper means.

Any one of the foregoing entitles Fidelity to judgment as a matter of law on Captiva's tortious interference claim.

Captiva has likewise failed to establish that it is entitled to judgment on its breach of contract claims for failure to indemnify for unmarketability. To the contrary, the plain language of the title policy conclusively establishes Fidelity's right to judgment as a matter of law. It specifically provides that Fidelity had the right to defend the mechanics' lien cases until a final determination, which it undisputedly did. Moreover, apart from the mere period of years required to clear the liens -- in and of itself a fact wholly insufficient to prove lack of reasonable diligence - Captiva has presented no evidence that Fidelity and SSB failed to act appropriately and promptly to clear the liens. As a matter of law, Captiva cannot claim damages for unmarketability while Fidelity exercises its right to defend the liens to final determination. Moreover, the evidence also established that Captiva cannot recover for alleged unmarketability losses because the claim is based on mechanics' liens recorded after the policy's effective date.

Similarly, Captiva has not shown that it can prevail on its claim for breach of contract for failing to provide a defense. The uncontested evidence during Captiva's case-in-chief was that Fidelity defended Captiva under a reservation of rights and Captiva accepted that defense. Thus, as a matter law, Fidelity retained the right to control that defense.

Further, Fidelity is entitled to judgment as a matter of law on Captiva's breach of contract and tortious interference claims because Captiva has failed to show that it has any recoverable damages. Captiva recovered all of the amounts it is entitled to receive under the policy.

Finally, because Captiva failed to establish its claims for breach of contract, it necessarily follows that Fidelity is entitled to judgment as a matter of law on Captiva's claims for vexatious refusal and declaratory judgment

## STANDARD ON A RULE 50 MOTION

Pursuant to FED. R. CIV. P. 50(a), a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000). Under this rule, the trial court should remove cases or issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000). The test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Steckstor by Santa Cruz v. Hancock*, 984 F.2d 274, 276 (8th Cir. 1993). Thus, if a non-moving party, for whatever reason, fails to establish an essential element of its case, or if reasonable minds could come but to only one "conclusion as to the verdict," then the court is obliged to direct a verdict accordingly. *See id.*

## I. CAPTIVA FAILED TO ESTABLISH A CLAIM FOR TORTIOUS INTERFERENCE.

Captiva has failed to establish a claim for tortious interference with its attorney-client relationship with SSB. Under the evidence presented at trial, it is clear that: (a) Captiva cannot show any evidence that "but for" the actions of Fidelity, the results of the mechanics' lien cases would have been different; (b) Captiva's claim is precluded because its breach of contract and vexatious refusal to pay claims are carbon copies of one another; and (c) Captiva failed to prove each of the required elements of tortious interference because it is a party to the same contract as Fidelity, and it cannot prove that Fidelity acted without justification, a required element to establish a claim for tortious interference.

### A. Captiva Failed to Show that "But For" the Actions of Fidelity the Mechanics' Lien Cases would have Concluded Sooner or with a Different Result.

Captiva failed to present any evidence of causation on its claim for tortious interference. The Missouri Supreme Court was unequivocal in stating that the "but for" test for causation is

3

applicable in all cases except those involving two independent torts, either of which is sufficient in and of itself to cause the injury, *i.e.*, the "two fires" case.[1] *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862-63 (Mo. 1993); *see also Fabricor, Inc. v. E.I. DuPont de Nemours & Co.*, 24 S.W.3d 82, 93 (Mo. App. 2000) ("but for" test applied to tortious interference claim). The "but for" causation test provides that "the defendant's conduct is a cause" of the event if the event would not have occurred "but for" that conduct. *Callahan*, 863 S.W.2d at 860-61 (citing PROSSER AND KEETON ON TORTS, § 41 at 266 (5th ed. 1984)).

Under this test, Captiva is required to prove that but for the actions of Fidelity, Captiva would not have been injured. Or stated another way, in order for Captiva to recover under its claim for tortious interference, it must show that had Fidelity not acted in the manner that it did, the results of the mechanics' lien cases would have been different. Captiva failed to present any evidence of this. In fact, the only evidence presented by Captiva is that the mechanics' liens were successfully litigated, with SSB defeating the majority of the claims and reducing the amount of liens from over $7 million to under $1 million. Without presenting crucial evidence that the outcome would have been any different, Captiva cannot prove the most basic element of its tortious interference claim – causation. As a result, Fidelity is entitled to judgment as a matter of law on this claim.

**B.**     **Captiva's Tortious Interference Claim is Precluded Because Captiva Failed to Present Any Evidence of an Alleged Breach of Duty Other than One Arising Under Contract.**

Captiva's claim for tortious interference is simply a rehash of its breach of contract claim. Under Missouri law, a plaintiff cannot recover in tort for a defendant's failure to perform contractual obligations. *See State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d

---

[1] The "two fires" case is when two independent tortfeasors set fires on opposite sides of the mountain, the fires burn toward the cabin at the top, and either is sufficient to destroy the cabin. Under these circumstances, the "but for" test fails to accurately test for causation in fact because the absence of either fire will not save the cabin. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 861 (Mo. 1993).

134, 140 (Mo. banc 1987); *Ryann Spencer Gp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284 (Mo. App. 2008). In other words, the mere failure to perform a contract does not give rise to tort liability. *Ryann Spencer*, 275 S.W.3d at 290. Therefore, Captiva must present evidence of more than Fidelity's alleged failure to fulfill its contractual obligations under the title insurance policy in order to submit a claim for tortious interference.

The Missouri Supreme Court considered the specific issue of when an insurer's alleged misconduct would give rise to a tort claim in *Hartenbach*. In that case, the plaintiffs alleged that the defendant insurer was liable in tort based upon its failure to pay out on a life insurance policy in a timely manner. 742 S.W.2d at 139. Faced with whether the plaintiffs' claim sounded in tort or contract, the court analyzed the source of the duty that was allegedly violated. *Id.* at 140. It then determined that the duty arose from the parties' contract and that the "failure to perform a contracted obligation in a timely manner would not be an independent tort in the absence of a contract." *Id.* at 140. Accordingly, the court held that the duty breached stemmed from a contract (the life insurance policy) and did not amount to a tort. *Id.*

The Eighth Circuit has likewise instructed that an insured complaining of breach of an insurance contract may not bring a tort claim dependent on the elements of the breach of contract claim. *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002); *see also Ingrassia v. One Beacon Ins. Gp.*, No. 4:14-CV-1216-CDP, 2014 WL 4639171, at *2 (E.D. Mo. Sept. 16, 2014) (citing cases). Damages for breach of contract are limited to the loss of the benefit itself. *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67 (Mo. banc 2000). Additionally, an insured may recover consequential damages, such as attorneys' fees and interest, under Missouri's vexatious refusal statute where the insurance company refuses to pay without reasonable cause or excuse. *Ingrassia*, 2014 WL4639171 at *2. However, the only way that an insured may state a tort claim is if "the facts that form the basis for the tort claim [are] independent from the facts

underlying the contract and vexatious refusal to pay claims...." *Id.* (dismissing tort cause of action for failure to state a claim on preclusion grounds); *see also Ryann Spencer, supra* (finding that tort claims are precluded because same facts upon which the tort claims arose, were the same facts that fell within the plaintiff's claims for breach of contract and vexatious refusal).

Just as in *Hartenbach*, the source of the claimed duty here – Fidelity's alleged duty to provide Captiva with representation and defense against certain matters – is purely contractual in nature. And, just as in *Ryann Spencer*, the evidence adduced by Captiva to support its claim for tortious interference is identical to that presented in support of its separate claim for breach of contract and vexatious refusal. Simply put, based on the evidence presented at trial, Captiva is improperly seeking to recover in tort for Fidelity's alleged failure to uphold contractual obligations. Indeed, the evidence presented in Captiva's case for both causes of action was that Fidelity: (1) limited Captiva's defense; (2) temporarily withheld certain documents; and (3) decided to appeal the mechanics' lien cases. Under *Hartenbach, Ryann Spencer, Wiles, Ingrassia* and the case law cited therein, Captiva's tortious interference cause of action is precluded as a matter of law by its contract and vexatious refusal to pay claims.

**C.      Captiva Failed Prove the Elements of Tortious Interference.**

Even assuming that Captiva's tortious interference claim was not legally precluded, Captiva failed to establish with competent evidence each of the essential elements of a tortious interference claim. To prove a claim for tortious interference with business expectancy, Captiva must demonstrate: (1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) intentional interference by defendant inducing or causing a breach of the relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct. *Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 602 (Mo. banc 2013).

Additionally, a tortious interference claim "will not lie against a party to the relationship with which interference is alleged." *See, e.g., Zipper v. Health Midwest*, 978 S.W.2d 398, 419 (Mo. App. 1998). "To hold otherwise would be tantamount to permitting recovery of punitive damages in a contract action, which the Supreme Court of Missouri has declared to be improper." *White v. Land Clearance for Redev. Auth.*, 841 S.W.2d 691, 695 (Mo. App. 1992). Captiva failed to adduce evidence establishing all elements of its tortious interference claim.

**1.    Captiva's tortious interference claim fails because Fidelity is a party to the same attorney-client relationship with SSB.**

As noted, a tortious interference claim "will not lie against a party to the relationship with which interference is alleged." *Zipper*, 978 S.W.2d at 419; *see also Graham v. Hubbs Machine and Mfg., Inc.*, --- F.Supp.3d ---, No. 4:14-CV-419-CEJ, 2015 WL 728510, at *6 (E.D. Mo. Feb. 19, 2015) (dismissing tortious interference action for failure to state a claim under Missouri law because the defendant was not a third party to the disputed relationship); *Jurisprudence Wireless Commc'ns., Inc. v. CyberTel Corp.*, 26 S.W.3d 300, 302 (Mo. App. 2000) (tortious interference "cannot lie against a party to a contract which creates the business expectancy"); *see also Kelly v. State Farm. Mut. Auto Ins. Co.*, 218 S.W.3d 517, 525 (Mo. App. 2007).

Captiva alleges that Fidelity tortiously interfered with Captiva's attorney-client relationship with SSB, but this Court has already found that ***both*** Fidelity ***and*** Captiva had an attorney-client relationship with SSB. *See Fidelity Nat. Title Ins. Co. v. Captiva Lake Inv., LLC*, No. 4:10-CV-1890-CEJ, 2011 WL 2462048, at *2 (E.D. Mo. June 17, 2011) ("In actuality, both Fidelity and Captiva are clients of SSB."). This Court's prior ruling is consistent with settled Missouri law. *See In re Allstate Ins. Co.*, 722 S.W.2d 947, 952 (Mo. banc 1987) (holding that "defense counsel retained by an insurance company ***actually represent both insurer and insured***") (emphasis added); *Helm v. Inter-Ins. Exch.*, 192 S.W.2d 417, 941 (Mo. banc 1946)

(same); *see also Commw. Land Title Ins. Co. v. St. Johns Bank & Trust Co.*, No. 4:08-CV-1433-CAS 2009 WL 3069101, at *5, n.3 (E.D. Mo. Sept. 22, 2009) (same, applying Missouri law).

Consistent with this bedrock principle, no state or federal court in Missouri (or anywhere else that counsel has been able to locate) has recognized a tortious interference claim based upon an insurer's alleged interference with the attorneys it retained to defend its insured under an insurance policy. In fact, Missouri courts have repeatedly rejected efforts by plaintiffs to raise tortious interference claims against parties to the relationship with which they allege interference. *See, e.g., Farrow*, 407 S.W.3d at 602-03 (rejecting tortious interference claim against plaintiff's supervisor relating to business expectancies attendant to her employment with the hospital because "while acting as [plaintiff's] supervisor, he was [the] [h]ospital's agent, not a third party."); *Oliver v. Ford Motor Credit Co., LLC*, 437 S.W.3d 352, 360 (Mo. App. 2014) (affirming directed verdict on tortious interference claim because defendant was not a third party to the disputed relationship); *Zipper*, 978 S.W.2d at 419 (rejecting tortious interference claim against agents of hospital that allegedly denied staff privileges).[2]

In addition, courts elsewhere have explicitly rejected tortious interference claims against insurers under these circumstances, reasoning that the common attorney owed duties to the insurer and insured alike. *See, e.g., Gardner v. Aetna Cas. & Sur. Co.*, 841 F.2d 82, 86-87 (4th Cir. 1988); *Taylor v. Allstate Ins. Co.*, 356 S.W.3d 92 (Tex. App. 2011). In *Gardner*, the Fourth Circuit affirmed summary judgment for the defendant insurance company which was alleged to have tortiously interfered with the attorney-client relationship between the insured and the attorney hired by the insurance company. *Id.* The Fourth Circuit, which characterized its ruling as requiring "little discussion," explained that the lawyer had responsibilities to plaintiff and the

---

[2] *See also Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517 (Mo. App. 2007) (rejecting tortious interference claim against a party to the disputed relationship); *Century Mgt, Inc. v. Spring*, 905 S.W.2d 109, 113-14 (Mo. App. 1995) (same); *White*, 841 S.W.2d at 695 (same).

insurer alike, and that no tortious interference in the attorney-client relationship occurred "simply because [the insurer] ordered [the lawyer] to take action that was within the scope of the [insurer's] contractual rights." *Id.*

In *Taylor*, a Texas appellate court likewise affirmed summary judgment for the defendant insurance company on plaintiff insured's claim that the insurer tortiously interfered with the attorney-client relationship between the insured and the attorney hired by the insurer. *Taylor*, 356 S.W.3d at 99. The court observed that plaintiff had not adduced "any authority permitting an insured's claim against his insurer for tortious interference with the attorney-client relationship between the insured and legal counsel retained by the insurer." *Id.*

In short, under the rule in *Farrow*, *Oliver*, *Zipper* and numerous other cases applying Missouri law, Fidelity is not subject to a tortious interference claim based upon its actions with respect to SSB because Fidelity is itself a party to the relationship between Captiva and SSB. Moreover, this result is unaffected simply because Martin Blanchard testified that he thought he also had an attorney client relationship with Fidelity on matters separate and apart from the lien litigation. This Court has held that, as a matter of law, there is a tripartite relationship between Captiva, Fidelity and SSB with respect to the lien litigation. Moreover, as set forth below, even if Blanchard was incorrect in his assessment of client duties in the lien litigation, proof that Blanchard failed to turn over his correspondence with Fidelity and reviewed Mark Dickhute's proposed response to the Missouri Department of Insurance complaint are wholly insufficient to present a submissible case of tortious interference. Thus, Fidelity should be granted judgment as a matter of law on Captiva's tortious interference claim.

**2.** **Fidelity was justified in giving direction to SSB, because it retained the right to control the defense of claims against Captiva and it did not employ any improper means.**

Captiva has the burden of producing "substantial evidence" of defendant's "absence of justification." *Cmty. Title Co. v. Roosevelt Fed. Sav. and Loan Ass'n,* 796 S.W.2d 369, 372 (Mo. banc 1990). While it is not justification for the defendant to employ "improper means" to induce a breach of the disputed relationship, "there is no impropriety or self-interested interference when a defendant has a legitimate economic interest in the contract or expectancy." *Id.* In fact, a party is "privileged" to interfere with another's business expectancy to protect its own economic interest. *Id.*

The Missouri Supreme Court has observed that an insurer has a "very substantial interest" in litigation involving its insured, and is "entitled to retain counsel of its own choosing to protect its interest." *Allstate,* 722 S.W. 2d at 950. In protecting this legitimate interest, the insurer has the contractual right to direct the litigation, evaluate claims, and make the decision to settle or try the case; in fact, it "may make economic decisions without the assent of the insured" and may "decide what to spend in defense, what discovery is to be had, and what experts to hire." *Id.* at 952. Accordingly, it is indisputable that Fidelity had a strong and legitimate interest in overseeing the defense of the claims against Captiva.

Thus, to prevail on its tortious interference claim, Captiva must show that Fidelity engaged in "improper conduct" in the relevant sense. *Cmty. Title,* 796 S.W.2d at 372. For purposes of a tortious interference claim, the term "improper means" refers to "those means which are independently wrongful, notwithstanding injury caused by the interference," such as "misrepresentation of facts, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id.* at 373. Captiva failed to present any evidence of such "improper conduct." Instead, its "evidence" consisted of complaints that

10

Fidelity did not promptly advise Captiva *why* certain actions by SSB were not approved, failed to approve hiring an expert in the mechanics' lien litigation, improperly claimed attorney-client privilege with respect to certain communications and disagreed with some strategy decisions including whether to settle certain claims and appeal the mechanics' lien cases. However, none of these alleged acts rise to the level of improper conduct required to sustain a tortious interference claim. Captiva presented no evidence that Fidelity misrepresented any facts, made any threats, or engaged in any of the types of wrongful conduct recognized as "improper means" in Missouri courts. Instead, Fidelity had the right to do what it did, particularly in terms of selecting which defenses to assert and to make decisions whether to appeal or settle. *Id.* at 372 ("No liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualifications."). As for withholding information and/or the file from Captiva, even if done in error, neither of these actions is independently wrongful under a statute or the common law.[3]

Because Captiva failed to offer proof that Fidelity used improper means to induce SSB to commit the acts which it claims constitute a breach of SSB's fiduciary duties, or that Fidelity did not have a legitimate interest in the defense which SSB provided Captiva against the mechanics' lien claims, Captiva cannot establish that Fidelity lacked justification for interfering in its attorney-client relationship. Therefore, Captiva cannot make a submissible case for tortious interference and Fidelity is entitled to judgment as a matter of law on this issue.

---

[3] Although a lawyer has a duty to turn over its file to a client, there is no precedent in Missouri "for a party obtaining relief for a failure to turn over a legal file alone by means of a breach of fiduciary duty." *Estate of Bonifer v. Kullman Klein and Dioneda, P.C.*, --- S.W.3d ---, 2014 WL 6464011, *4 (Mo App. 2014). No claim will lie, as here, where the plaintiff ultimately obtains the file and is uninjured by the delay. *Id.* at *5.

## II. CAPTIVA HAS FAILED TO ESTABLISH A BREACH OF CONTRACT FOR FAILURE TO INDEMNIFY FOR UNMARKETABILITY.

Missouri law defines a marketable title as "one which not only enables the holder to hold the land, but to hold it in peace, and if there is a wish to sell, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value." *Forty Bon, Inc. v. St. Louis Inv. Prop, Inc.*, 965 S.W.2d 471, 473 (Mo. App. 1998).[4] However, Captiva has failed to establish a claim for unmarketability because Fidelity had the right to defend the mechanics' liens until a final determination. In addition, the policy does not provide coverage for an alleged loss of marketability because the claim is based on upon encumbrances (the mechanics' liens) that arose after the effective date of the policy.

### A. Captiva Failed to Establish a Claim for Unmarketability because Fidelity had the Right to Defend the Mechanics' Liens Until a Final Determination.

Captiva claims that it was unable to sell the property or get a loan while the mechanics' liens were pending, despite the fact that Captiva itself purchased the property while the liens were pending. As an initial matter, the evidence presented by Captiva was that it never listed the property for sale or submitted any written loan applications to get a loan. But even if it had, under the plain and unambiguous language of the policy, no loss is payable for damages incurred while title is being cleared, including damages for unmarketability. To find otherwise would nullify: (1) Fidelity's express rights under the policy to pursue litigation attacking or defending the validity of a claim against title to a final determination (Conditions & Stipulations, ¶ 4(a)), and (2) the limitation of liability in the policy which expressly provides that Fidelity shall have no liability for loss or damage until there is a final determination (*Id.* at ¶ 8(b)).

Under the clear and unambiguous terms of the policy, Fidelity was not obligated to pay

---

[4] The title policy further defines "unmarketability of the title" as "an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate of interest … to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title." (Conditions & Stipulations, 1(g)).

off the mechanics' liens upon demand by Captiva. Instead, the policy not only permitted, but required Fidelity, upon the written request of Captiva, to provide a defense to Captiva in the mechanics' liens litigation. (*See id.* at ¶ 4(a)). Moreover, once Fidelity acceded to Captiva's request to defend it, Fidelity had the right to pursue the litigation to a final determination and is not liable for any loss until there is a final determination.

Based on the foregoing provisions, courts have recognized an insurer's right to litigate the issue of a defect in title until there is a final determination. As one court stated:

> A title policy indemnifies rather than guarantees the state of the insured title. The policy does not guarantee that litigation will not occur, but, in fact, assumes the opposite, that many types of title defect litigation can occur. The insured's claim must await an adverse title determination by the court.

*Lawyers Title Ins. Corp. v. Synergism One Corp.*, 572 So.2d 517, 518 (Fla. App. 1990). And, courts similarly recognize that no claim can accrue, including a claim for lack of marketability, if title is cleared as a result of litigation. *See Holmes v. Dev., LLC v. Cook*, 48 P.3d 895 (Utah 2002) (denying claims for lost profits and carrying costs where insurer successfully defended insured's title and title was cleared).

Here, the evidence presented at trial was that Captiva's claim for unmarketability is based solely on the fact that mechanics' liens on the property remained during the pendency of the lien litigation. The evidence further showed that Fidelity litigated the lien claims to a final determination, defeating the vast majority of those claims and paying the few in which there was a judgment. The evidence also established that Fidelity paid those liens within 30 days. As a result, there is no possibility that a reasonable jury could find in favor of Captiva on its unmarketability claim, and therefore, Fidelity is entitled to judgment as a matter of law on Captiva's breach of contract claim for failure to indemnify for unmarketability of title.

**B.**     **The Policy Does not Cover Captiva's Alleged Unmarketability Losses Because they are Based Upon Mechanics' Liens Recorded After the Policy's Effective Date.**

Captiva has also failed to establish its unmarketability claim because the undisputed facts presented at trial showed the claim is not covered under the express language of the policy. There is no dispute that the policy's coverage against unmarketability of title only insures against matters "affecting title" *as of* October 25, 2007. Likewise, the uncontested evidence at trial was that each of the mechanics' liens were filed *after* October 25, 2007. (*See* Trial Ex. 142). Because it is undisputed that none of the mechanics' liens affected title on the effective date of the policy, Captiva cannot recover on its unmarketability claim.

In *Goodner v. Mosher-Roe Abstract & Guar. Co.*, 282 S.W. 698 (Mo. 1926), the Missouri Supreme Court held that a mechanics' lien "does not take tangible form as an encumbrance against real estate until set forth in a document, verified and filed in conformity with the statutory provisions." *Id.* at 699. Presently, those statutory provisions are codified at Chapter 429 of Missouri's Revised Statutes. MO. REV. STAT. § 429.080 expressly states and requires that any mechanics' lien claimant file a written accounting of what is owed as a *condition precedent* to obtaining a lien. That accounting must be filed with the circuit clerk for the county where the land against which the lien is sought is located. *Id.* Via *Goodner* and MO. REV. STAT. § 429.080, Missouri has adopted a substantive rule of law stating that mechanics' liens are not encumbrances against title unless and until their written lien statements are filed. The very same rule of law was subsequently applied in *Realty Sav. & Inv. Co. v. Washington Sav. & Bldg. Ass'n*, 63 S.W.2d 167 (Mo. App. 1933), which held that paying a contractor who had not filed a written lien statement did not constitute payment of an "encumbrance." *Id.* at 170. The *Realty* court held that "[a] claim may be developed into a lien upon compliance with the law, but the mere possibility that it may become a lien does not make it a lien." *Id.*

14

In *Goodner* and *Realty*, like here, the issue is whether a mechanics' lien affected title as of a certain date. Accordingly, those cases are controlling given this Court's obligation to apply substantive Missouri law. *Erie RR. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Just as the mechanics' liens at issue in *Goodner* and *Realty* were not an encumbrance on title because the required lien statements had not been filed, the mechanics' liens forming the basis for Captiva's unmarketability claim did not affect the property's title as of October 25, 2007, because none of the contractors who eventually asserted those liens had yet complied with MO. REV. STAT. § 429.080. As of October 25, 2007, the assertion of mechanics' liens was not inevitable; rather, to the extent any contractor had supplied labor or materials without payment, it was their prerogative to assert or not assert a mechanics' lien in the future. Accordingly, Fidelity is entitled to judgment as a matter of law on Captiva's claim for unmarketability of title because each of the mechanics' liens in this case arose after the effective date of the policy.

III.   **CAPTIVA FAILED TO ESTABLISH ITS CLAIM FOR BREACH OF CONTRACT FOR FAILING TO PROVIDE A DEFENSE.**

Captiva has not established a breach of contract claim for failing to defend Captiva under the policy because the undisputed evidence showed Fidelity accepted the defense pursuant to a reservation of rights and Fidelity had the express right under the policy to control and direct Captiva's defense. In addition, the evidence presented at trial confirms that Fidelity fully satisfied its obligations with respect to the mechanics' liens.

A.   **Fidelity Accepted the Defense of Captiva and Retained the Right to Control and Direct Captiva's Defense.**

Missouri law allows insurers to defend their insureds while reserving rights to later disclaim coverage so long as the insureds are given notice of the reservations. *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 88 (Mo. App. 2005). The insured's options are to accept the defense with a reservation of rights and allow the insurer to defend *or* reject the reservation

of rights and take over the defense itself. *Brooner & Assoc. v. Western Cas. & Sur.* 760 S.W.2d

445, 447 (Mo. App. 1988); *Central Bank v. St. Paul Fire & Marine Ins.*, 929 F.2d 431, 433 (8th

Cir. 1991) (applying Mo. law). When an insured accepts a defense with a reservation of rights it

binds itself to cooperate with the insurer. *Id.*

Further, insurers possess a wide spectrum of rights when directing and controlling an

insured's defense:

> The insurer has the contract right to direct the litigation against its
> insured. It may evaluate claims and decide whether to settle or try. It
> may make economic decisions without the assent of the insured. The
> insured may want a quick settlement to eliminate further demands on
> time and energy, but the insurer does not have to settle unless a
> satisfactory offer is forthcoming. Or the insurer may accept a
> settlement offer even though the insured wants to go to trial to
> establish freedom from fault. The insurer may decide what to spend in
> defense, what discovery is to be had, and what experts to hire. It also
> has the right to select counsel to defend its interests.

*Allstate Ins. Co.*, 722 S.W.2d at 952.

This Court has already concluded that Captiva accepted Fidelity's defense with a

reservation of rights. (Doc. No. 227 at 16). Moreover, Dan Stegmann testified unequivocally at

trial that Captiva accepted the defense subject to a reservation of rights. Captiva at no time

rejected the proffered defense, however, and it should not now be permitted to seek damages for

the results of its own decision to provide Fidelity the right to control and direct its defense.

The evidence at trial established that the subject matter of Captiva's complaints are

matters that went to strategy regarding the defense and settlement. Both Blanchard and Trent

Bond, the attorneys who represented Captiva in the lien litigation, testified that they thoroughly

investigated and conducted discovery regarding the potential defenses suggested by Captiva, but

that ultimately, those defenses and hiring an expert to testify regarding those defenses, were not a

sound defense strategy. In fact, the evidence presented clearly showed Captiva was not

successful when it hired separate counsel to assert those defenses. Moreover, Blanchard and

Bond testified that there were facts and legal arguments that weighed in favor of *not* paying the Butler and Grau liens. In short, the evidence at trial simply showed that Fidelity was exercising its right to control the defense and to settle claims. As such, Captiva has not established its breach of contract claim relating to failure to provide a defense and Fidelity is entitled to judgment as a matter of law.

### B. Captiva Failed to Establish a Claim for Breach of the Duty to Defend Based on its Allegations of Delay or Lack of Diligence.

At trial, Captiva sought an end run around firmly established Missouri law which allows Fidelity to control the defense of the mechanics' lien cases by pointing to various provisions in the title policy and trying to infer some type of general duty of good faith, a claim which has not been pled by Captiva. Captiva first pointed to Paragraph 4(a) in the Conditions & Stipulations, which provides that: "Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation…." Thus, under the plain and unambiguous language of paragraph 4(a), Fidelity was required to provide a defense without unreasonable delay, which the unambiguous evidence shows it did. Captiva submitted its claim on August 3, 2009, and by October 1, 2009 was advised that SSB had been hired to represent it in the mechanics' lien cases.

Captiva has also pointed to paragraph 8(a) of the Conditions and Stipulations as imposing some type of obligation upon Fidelity to establish title without unreasonable delay and claims that it gives rise to a cause of action against Fidelity if it does not. It does so despite the clear language of the policy allowing Fidelity to prosecute or defend any case to a final determination. It further suggests that this language somehow deprives Fidelity of its right control the defense and strategy, including making the decisions to appeal or settle. Counsel is not aware of any Missouri case that has recognized and allowed an insured to recover for delay damages where, as

here, an insured has accepted a defense by retained counsel subject to reservations of rights. Furthermore, as noted in Section II.A. above, courts in other jurisdictions have recognized that there will in fact be a "delay" while an insurer exercises its right to defend against a lien or other encumbrance on title.

Even if there was some duty to defend a case without unreasonable delay, Captiva failed to offer any evidence at trial that there was unreasonable delay in defending the mechanics' lien cases. It has not offered any evidence that there would have been a quicker resolution of the mechanics' liens absent some specific delay, other than speculative testimony from lay witnesses that liens could possibly have been settled sooner and that Fidelity should not have made the decision to appeal, a decision it unquestionably had the right to make under the policy. Moreover, it offered no credible testimony or evidence that the decision to appeal was unreasonable other than its own preference that there not be an appeal. Mr. Stegmann's personal views that the appeal was a "fraud on the court" fall woefully short of demonstrating unreasonableness particularly where, as here, neither lien claimants' counsel nor the Court of Appeals itself ever questioned whether the appeal was reasonable or in good faith. In short, Captiva wholly failed to establish any claim for breach of contract based on delay or lack of diligence, and thus, Fidelity is entitled to judgment as a matter of law on Captiva's breach of contract claim for failure to defend.

## IV. CAPTIVA HAS FAILED TO ESTABLISH THAT FIDELITY IS LIABLE FOR VEXATIOUS REFUSAL.

Captiva is not entitled to recover the statutory penalties and fees it seeks under MO. REV. STAT. § 375.296. To make a *prima facie* case for vexatious refusal, Captiva would have to introduce evidence that Fidelity refused to pay a loss and did so without reasonable cause. *Howard Const. Co. v. Teddy Woods Const. Co.*, 817 S.W.2d 556, 562 (Mo. App. 1991).

The evidence presented at trial established that Fidelity provided a defense to Captiva for all of the mechanics' lien claims and was successful in defeating the vast majority of them. For the five remaining liens, the evidence proved that Fidelity paid those on behalf of Captiva. Accordingly, Captiva has not introduced any evidence supporting the alleged fact that Fidelity refused to pay a loss without reasonable cause.

Accordingly, no reasonably jury could find (1) that Fidelity refused to pay a loss, and (2) that any such refusal was without reasonable cause. For these reasons, this Court should grant Fidelity judgment as a matter of law on Captiva's claims or vexatious refusal.

## V. CAPTIVA HAS FAILED TO SHOW ANY RECOVERABLE DAMAGES.

Captiva has failed to show any recoverable damages, thus, this Court should grant Fidelity judgment as a matter of law on all of Captiva's claims. Captiva seeks damages for: all of its expenses associated with the property from the date of its purchase (which was prior to the time it made a claim under the policy) until the present (which is subsequent to the time that title was cleared); reimbursement for the Grau lien; and either (1) damages as a result of the lost sale with MLake, or (2) "lost opportunity" damages resulting from an alleged decreased sale price of the condominiums and an alleged increase in costs in completing construction. Simply put, the types of damages Captiva seeks are not recoverable under a title insurance policy. Accordingly, Captiva has not established it is entitled to any recoverable damages.

### A. The Evidence Established That Captiva Recovered All Amounts Due Under the Policy.

Captiva cannot recover the damages it seeks because the evidence proved that Captiva recovered all amounts payable under the title insurance policy. Under well-established Missouri law, the proper measure of damages for a claim under a title insurance policy is the cost of restoring title or the difference in fair market value, whichever is less. *Aboussie v. Chicago Title Ins. Co.*, 949 S.W.2d 207, 209 (Mo. App. 1997); *Evinger v. McDaniel Title Co,* 726 S.W.2d 468

19

(Mo. App. 1987). In the *Aboussie* case, the Missouri Court of Appeals explained Missouri law regarding the permissible recovery under a title policy as follows:

> Title insurance is a contract to indemnify the insured for any losses incurred as a result of later found defects in title. Recovery is generally limited to the amount necessary to remove the title defect or the difference between the fair market value of the property conveyed and its fair market value had it been as described in the property.... However, at least in cases involving a partial and not a total failure of title, the measure of damages is the same – i.e., the difference in fair market value or the cost of restoring title, whichever is less, up to the limits of the policy.

949 S.W.2d at 209 (internal quotations omitted).

Moreover, paragraph 7 of the policy limits Captiva's recovery to "actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent here described." (Conditions & Stipulations 7). The policy then states that the "liability of the Company under this policy shall not exceed the least of ...(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy." Thus, the carrying charges and the lost profit or lost opportunity damages claimed by Captiva are not "losses" under the express language of the policy. *See RTC Mortg. Trust 1994 N-1 v. Fidelity Nat. Title Ins. Co.*, 58 F.Supp.2d 503 (D. N.J. 1999) (carrying charges and lost time value of foreclosure proceeds during pendency of successful title priority litigation were not losses recoverable under title policy because insurer fulfilled its obligations under policy by defending mortgager's interest in property).

The evidence at trial established that Captiva already recovered the amount necessary to remove the title defect. Fidelity paid for Captiva's cost of defense in the mechanics' lien litigation and satisfied the five mechanics' lien judgments against the Majestic Pointe property, thereby removing any defect in or alleged unmarketability of title. The evidence proved that the

cost of restoring title was slightly more than $2 million and that ***Fidelity has already paid these amounts***, thereby satisfying all of its obligations under the policy. Captiva's claims for lost profits from the MLake sale or lost opportunity damages are consequential damages that cannot be recovered under the policy.

Moreover, the damages claimed by Captiva are not "actual monetary loss or damage[s]" suffered by Captiva. To the contrary, Jack Davis testified unequivocally that Captiva's purchase price of $2 million for the property was discounted because of the mechanics' liens against the property. Thus, Captiva did not suffer any "actual monetary loss or damage" as a result of the mechanics' liens and allowing Captiva to recover for an alleged decrease in the value of the property because of the liens would result in a windfall to Captiva.

Simply put, the undisputed evidence proves Captiva is entitled to no damages and Fidelity is entitled to judgment as a matter of law.

**B.**    Captiva Cannot Recover the Alleged Expenses Related to the Property, "Lost Opportunity" Damages or Lost Profits from the MLake Sale.

**1.**    **The Appropriate Measure of Damages Under a Lender's Policy is the Diminution in the Fair Market Value of the Security.**

Even if Captiva was entitled to recover damages separate and apart from the cost of restoring title, which it is not, Captiva is not entitled to the claimed damages because the title policy at issue is a lender's policy, not an owner's policy. Although Missouri courts have not specifically addressed the issue of what damages are recoverable under a lender's policy, a number of other jurisdictions have done so. In *Blackhawk Prod. Credit Ass'n v. Chicago Title Ins. Co.*, 423 N.W.2d 521 (Wis. 1988), the Supreme Court of Wisconsin explained the difference between a lender's policy and an owner's policy:

> Defining and measuring actual loss under a title insurance policy is not the same for the owner who has title to property, and a mortgagee who holds only a security interest in the borrower's title. The fee interest of an owner is immediately diminished by the presence of a lien since

> resale value will always reflect the cost of removing the lien. A mortgagee's loss cannot be measured unless the underlying debt is not repaid and the security for the mortgage proves inadequate....For a mortgagee, title insurance undertakes to indemnify against loss or damage sustained by reason of defects of title or liens upon the land, but does not guarantee either that the mortgaged premises are worth the amount of the mortgage or that the mortgage debt will be repaid.

*Id.* at 525. After analyzing other cases and authority which looked at what damages are recoverable under a lender's policy, the *Blackhawk* court concluded that a lender is entitled to recover the difference between the value of the mortgage subject to the defect and what the value would have been had the defect not existed.[5] *Id.* at 527.

The undisputed evidence demonstrates that Captiva stands in the shoes of NCB and that the policy at issue is a lender's policy. However, Captiva did not adduce any evidence as to any claimed difference in the value of the mortgage subject to the alleged defect and what it would have been had the defect not existed. Instead, the damages that Captiva sought to recover are damages that only an owner could possibly assert – lost profits and damages to the property itself. Because the Captiva has failed to adduce any evidence regarding the claimed difference in the value of the mortgage subject to the alleged defect and what it would have been had the defect not existed, Fidelity is entitled to judgment as a matter of law.

### 2. Missouri Does Not Recognize Claims for Damages for Lost Profits, Lost Sales, or Property Damage Under a Title Insurance Policy.

In addition to the fact that the title policy at issue here is a lender's policy and not an owner's policy, Missouri courts have never recognized that an insured under a title insurance policy may recover the types of damages that Captiva seeks in this action. As noted above, Missouri courts, including the Missouri Supreme Court on two separate occasions, have

---

[5] As in the *Blackhawk* case, Captiva's purchase of the property on which it holds a security interest does not affect the analysis. "The fact that Blackhawk ultimately purchased the property on which it held a security interest does not change the nature of the contractual relationship bargained for between the mortgagee and the title insurer. A mortgagee's policy of title insurance does not convert to an owner's policy upon purchase of the insured land at foreclosure sale." *Blackhawk*, 423 N.W.2d at 525.

specifically delineated what an insured may recover as damages. In instances where there is a permanent defect in title – which there is not here – the only measure for recovery is the diminution in fair market value of the property. *See Spalding v. Stewart Title Guar. Co.*, --- S.W.3d ---, 2015 WL 2228547 (Mo. banc 2015) (where there is a permanent defect in title, the proper measure of damages is the difference between the fair market value of the entire insured property at the time the defect was discovered and the fair market value subject to the defect); *Fohn v. Title Ins. Corp. of St. Louis*, 529 S.W.2d 1 (Mo. banc 1975) (proper measure of damages is difference between the value of the entire tract of land insured and the value of that part which remained after severance and loss due to defect in title).

Furthermore, the Missouri Court of Appeals has affirmatively rejected claims for damages for lost profits by an insured under a title insurance policy. In *Evinger v. McDaniel Title Co.*, 726 S.W.2d 468 (Mo. App. 1987), real estate purchasers brought a claim against the title company after adverse claimants to the property brought a successful reformation action, resulting in the purchasers having title to only 55 acres as opposed to the 80 acres they believed they had purchased. In reversing the trial court's award of damages, the court stated as follows:

> Respondents' claim for damages is predicated on a permanent injury to real property. In essence, respondents claim that an 80–acre tract which would be profitable is rendered unprofitable by the reformation of the deeds entitling respondents to only a 55–acre tract. The appropriate measure of damages is the difference in fair market value of the property before and after injury or the cost of restoring the property, whichever is the lesser amount.... Since the property cannot be restored, the measure of damages would be the difference between the fair market value of the 80–acre tract and the fair market value of the 55–acre tract. As stated, *supra,* there was no evidence of the fair market values of either tract.

*Id.* at 475 (internal citations omitted).

Thus, even if Captiva could recover damages other than those costs associated with curing any defect in title, at best it would be entitled to recover the diminution in fair market

value of its security interest and not damages for "lost opportunity" damages, expenses associated with owning the property or lost profit from the MLake sale.   As stated above, Captiva has failed to adduce any evidence regarding the claimed difference in the value of the mortgage subject to the alleged defect and what it would have been had the defect not existed. Fidelity is entitled to judgment as a matter of law.

### 3.   Captiva Failed to Present Any Evidence Regarding Recoverable Damages on its Breach of Contract for Failure to Defend Claim.

Even if Captiva had established a claim for breach of contract for failure to defend, which it did not, it did not present any evidence of recoverable damages associated with its breach of contract claim for failure to defend.   Under Missouri law, "[a]n insurer is responsible for attorney's fees incurred by the insured who is in fact covered in defending an action the insurer has refused to defend." *Distler v. Reuther Jeep Eagle,* 14 S.W.3d 179, 186 (Mo. App. 2000). "Upon the refusal of an insurer to defend its insured the insurer becomes liable for attorney fees incurred by the insured in defending an action." *Fuller v. Lloyd,* 714 S.W.2d 698, 702 (Mo. App. 1986).   However, an insurer is not liable for attorney's fees incurred in a suit against it for failure to defend. *Id.*

Courts have recognized five types of damages arising from the breach of a title insurer's duty to defend: (1) judgments entered against the insured based on a covered cause of action; (2) amount of settlement entered into by the insured; (3) the cost of the insured's defense; (4) judgments entered against the insured on non-covered causes of action after the wrongful rejection of a defense; and (5) punitive damages for bad faith failure to defend. *See* TITLE & ESCROW CLAIMS GUIDE, 2ND EDITION, § 4-15 (2008).

However, Captiva did not present evidence that it incurred any of the widely recognized actual damages that could possibly arise from a title insurer's breach of its duty to defend. Captiva has not shown that judgments have been entered against Captiva on a covered cause of

action that has not been satisfied by Fidelity. Instead, Captiva seeks to recover damages for items such as alleged lost profits and damages for deterioration of its property. These types of alleged damages simply are not recoverable for breach of a duty to defend.

Captiva did present evidence that it voluntarily settled one of the mechanics' liens prior to judgment (for $5,000), but that was against the recommendation of Captiva's attorney, that Fidelity would not pay to hire an expert and that it hired an attorney to assert defenses that its attorneys at SSB did not recommend. Nevertheless, Captiva's complaints about Fidelity declining to pay SSB to pursue defenses, challenging the amounts of certain mechanics' liens, declining to hire experts to advance those defenses, and declining to settle the Grau lien are non-starters because Fidelity had the right to control Captiva's defense. It was Fidelity's prerogative to settle or not settle specific liens and to decide which defenses to pursue and which defenses to forego. Thus, Fidelity is entitled to judgment as a matter of law on Captiva's breach of contract for failure to defend claims because Captiva has presented no evidence of recoverable damages.

**C.      Captiva Has Not Established Damages With Respect To Its Tortious Interference Claim Or Its Breach Of Contract Claims.**

Captiva also has the burden to prove that it has experienced an actual injury as a result of Fidelity's alleged interference with SSB. *ARE Sikeston Ltd. P'ship v. Weslock Nat., Inc.*, 120 F.3d 820, 832 (8th Cir. 1997) (applying Mo. law and granting summary judgment to defendant because plaintiff could not establish any injury resulting from defendant's alleged tortious interference). Damages are an essential element of a cause of action for breach of contract. *Rice v. West End Motors, Co.*, 905 S.W.2d 541, 542 (Mo. App. 1995). "The mere breach of a contract which *causes no loss to plaintiff* will not support a judgment." *Id.* (emphasis added). Furthermore, mere speculation and conjecture are not sufficient to support Captiva's damages claim. *Mogley v. Fleming*, 11 S.W.3d 740, 747 (Mo. App. 1999). *Accord Ozark Emp.*

25

*Specialists, Inc. v. Beeman*, 80 S.W.3d 882, 897 (Mo. App. 2002) ("It is well established that competent and substantial evidence is required to support an award of damages").

Captiva has not met its burden. The evidence at trial established that SSB defeated most of the mechanics' liens, and Fidelity paid for those that were not defeated. To the extent the liens could have been redressed by additional defenses (that Captiva was in no position to demand), Fidelity still shouldered all of the responsibility for the liens it was unable to defeat. As such, Captiva was not damaged by Fidelity's direction of the defense.

Moreover, even if Captiva was entitled to recover damages for things such as lost profits or "lost opportunity," it failed to establish that these damages were caused by the actions of Fidelity. The evidence adduced by Captiva did not establish that the alleged lost profits were caused by Fidelity, as opposed to the downturn in the economy or some other reason. Moreover, Captiva failed to establish that the claimed deterioration to the property was caused by Fidelity as opposed to damage that occurred prior to the time that Captiva purchased the property or as a result of Captiva failing to secure the property.

In short, even assuming that Fidelity acted inconsistently with Captiva's rights relative to SSB, Captiva has failed to provide any evidence that it was actually injured as a result. Accordingly, Fidelity is entitled to a judgment as a matter of law on Captiva's claims for breach of contract and tortious interference.

**D.**     **Captiva Does Not Have Standing To Seek Damages For Lost Profits From the MLake Contract.**

Captiva sought to recover alleged lost profits as the result of MLake, a potential purchaser of the members' membership shares in Captiva, withdrawing from its purchase agreement with Captiva. Even assuming that Captiva could recover lost profits under the policy resulting from the cancellation of its contract with MLake, which it cannot, it has no standing to

do so.[6] The evidence adduced at trial was that under the terms of the transaction with MLake, the individual members of Captiva sought to sell their interests in Captiva, including the property and all other assets of the company. Dan Stegmann testified to this and the sale contract was entered into evidence. To the extent that there was a loss realized by MLake's cancellation of the transaction, such a loss would only have been to the individual **members** of Captiva and **not to Captiva itself**. Because Captiva is the only insured under the policy, any alleged loss to the individual members is not covered under the policy.

The Eighth Circuit has declared that "[a] title policy is a contract of indemnity, not of guaranty, and provides reimbursement for actual loss only." *Gibraltar Sav. v. Commw. Land Title Ins. Co.*, 905 F.2d 1203, 1204 (8th Cir. 1990) (quotations omitted). Under the policy, the actual loss must be incurred by the insured. So, in order for Captiva to recover damages for unmarketability of title, it would have to be able to introduce competent and substantial evidence of an "actual loss" to Captiva resulting from title to the property being unmarketable.

The case *Halfmoon Prof. Offices v. Am. Title Ins. Co.*, 235 A.D.2d 801 (N.Y. App. Div. 1997) is instructive. There, an insured partnership brought suit against a title insurer for breach of contract, seeking to recover damages that included losses incurred by the partners on personal loans and investments. The court held that because the alleged losses were not direct losses of the insured partnership, they were not recoverable:

> The individual claims for lost profits arise from losses relating to personal investments and/or personal loans, not debts or investments of the partnership. The individuals claim that they intended to either make certain investments or pay off certain loans with the money each would have received from the sale proceeds. These damages are remote and consequential in nature and not

---

[6] Standing is a jurisdictional issue that must be addressed by a court before reaching the merits of a lawsuit. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir.2007). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Elk Grove*, 542 U.S. at 11 (quotations omitted). Standing seeks to insure that the entity that was injured is the entity making the claim.

> covered under the title insurance contract which is in the nature of
> an indemnity contract requiring actual loss

*Id.* at 392 (internal citations omitted).

Simply put, Captiva has not shown that it was damaged by virtue of the failed MLake transaction. The transaction was not for the sale of the property. Instead, the contract was for the sale of ***Captiva***, including all of its assets. The parties to the contract were the ***members*** of Captiva and MLake. If the transaction had been successful, the proceeds of the sale would have gone to the ***members*** of Captiva and the corporate entity would have changed ownership. Title to the property would not have changed hands, and no deed would have been recorded. Under the terms of the Agreement, ***Captiva*** (the insured) would have never made a profit on the sale because it would have continued to own the property. As such, the failure of the transaction could not have resulted in a loss to the insured, Captiva. The insured under a title policy is entitled to recover only for the actual loss suffered. *Fohn v. Title Ins. Corp. of St. Louis*, 529 S.W.2d 1, 4 (Mo. 1975).

Because the evidence of any alleged loss that was suffered by virtue of the failed MLake transaction accrued to the individual members of Captiva and not Captiva itself, Captiva does not have standing to seek damages. An analysis of standing requires an evaluation of (1) injury, (2) causation, and (3) redressability. *In re Pierce*, 779 F.3d 814, 817 (8th Cir. 2015). It is fundamental that the plaintiff himself must have suffered the injury he seeks to redress. *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1158 (8th Cir. 2014). The evidence presented demonstrates Captiva itself has not suffered the injury it seeks to redress. As noted, the alleged injury was to the individual owners who sought to make a profit by the sale of the company. Because limited liability companies are ordinarily considered separate legal entities, distinct from its members or owners, its members make not seek damages for injuries that they allegedly suffered. *Hammett v. Atcheson*, 438 S.W.3d 452, 461 (Mo. App. 2014).

Any possible injury resulting from MLake's termination of the purchase agreement, accrued to the individual members of Captiva and not Captiva itself. Under the terms of the purchase agreement, the sellers are "the owners of all the membership interests. . . in Captiva Lake Investments, L.L.C., a Missouri limited liability company[.]" In other words, the individual owners were going to receive the payment under the terms of the purchase agreement. As such, only the individual owners could have lost out when MLake terminated the contract, and they have no standing to seek damages under the terms of the policy. Thus, as a matter of law Captiva cannot seek damages it claims it suffered as a result of the failed MLake transaction.

Additionally, the testimony proffered by Jack Davis of a $5,500,000 lost profit from the failed MLake sale is unfounded and speculative, misstates the terms of the contract and ignores Captiva's original purchase price. Mr. Davis conveniently decided to add an additional $1,000,000 to the calculation ostensibly to compensate for other claimed losses/carrying costs which were not legally or proximately caused by any alleged misconduct by Fidelity. His testimony fails to prove in any legitimate manner a lost profit arising from the MLake sale.

## VI.    CAPTIVA CANNOT PREVAIL ON ITS CLAIM FOR PUNITIVE DAMAGES.

Captiva claims it is entitled to punitive damages against Fidelity because Fidelity's alleged tortious interference with was willful and wanton and in reckless disregard of the rights of Captiva. However, Captiva's claims for punitive damages fail and the verdict must be directed in Fidelity favor on Captiva's punitive damages claim.

Missouri law is clear, before punitive damages can be considered, Captiva must present clear and convincing evidence of evil motive and reckless indifference to the plaintiffs' rights. *Romeo v. Jones*, 144 S.W.3d 324, 334 (Mo. App. 2004). Generally, evidence is clear and convincing if it *instantly tilts* the scales in favor of punitive damages and if it causes the fact finder to have an abiding conviction that the evidence is true. *Lopez-Viscaino v. Action Bail*

*Bonds, Inc.*, 3 S.W.3d 891, 893 (Mo. App. 1999) (emphasis added). Moreover, punitive damages are an extraordinary and harsh remedy intended to punish the defendant and should be applied only sparingly. *Romeo*, 144 S.W. 3d at 334.

At trial, rather than showing Fidelity acted with evil motive or reckless indifference to Captiva's rights, the evidence clearly shows that Fidelity defended Captiva against the mechanics' liens and then paid the only five mechanics' liens that were awarded. Simply put, Captiva has not adduced a scintilla of evidence to suggest that Fidelity's actions contained any evil motive or were in reckless indifference to Captiva's rights. Accordingly, Captiva has not made a submissible case for punitive damages and therefore Fidelity is entitled to judgment as a matter of law on Captiva's claim for punitive damages.

## VII. CAPTIVA HAS FAILED TO ESTABLISH ITS CLAIM FOR DECLARATORY JUDGMENT IN COUNT I OF ITS COUNTERCLAIM.

In Count I of Captiva's Counterclaim, Captiva asks this Court to declare (1) the "respective rights and obligations of the parties under the Title Insurance Loan policy with respect to Captiva's claims of July 1, 2009 and August 3, 2010"; (2) that Fidelity is obligated under the policy to defend or indemnify Captiva with respect to the mechanics' liens; and (3) that Fidelity is obligated under the terms of the policy to indemnify Captiva for damages it has incurred due to the unmarketability of the title to the property.[7] To succeed on these claims, Captiva has the burden to prove that the policy afforded it coverage for Captiva's unmarketability claim and the damages it has allegedly incurred. Missouri law specifically provides that the interpretation and meaning of an insurance policy is a question of law for

---

[7] Captiva also seeks its costs and attorney's fees. Fidelity denies that it is entitled to its costs and attorney's fees as it is not provided for in the contract or by statute. *See New Madrid County Reorganized Sch. Dist. No. 1, Enlarged v. Cont. Cas. Co.*, 904 F. 2d 1236, 1243 (8th Cir. 1990) (citing *Court of Washington County v. Murphy*, 658 S.W.2d 14 (Mo. banc 1983); *Harold S. Schwartz & Assoc., Inc. v. Cont. Cas. Co.*, 705 S.W. 2d 494, 498 (Mo. App. 1985).

determination by the court. *Mansion Hills Condominium Assoc. v. Am. Fam. Mut. Ins. Co.*, 62 S.W.3d 633 (Mo. App. 2001).

For all of the foregoing reasons set forth in this Motion, the policy does not provide coverage to Captiva for the unmarketability of title damages it claims to have incurred and Fidelity has satisfied its obligation to defend Captiva in the mechanics' lien cases. Moreover, as demonstrated above, Captiva cannot establish it has incurred any recoverable damages. Accordingly, Fidelity is entitled to judgment as a matter of law of Count I of Captiva's Counterclaim.

Respectfully submitted,

MARTIN, LEIGH, LAWS & FRITZLEN, P.C.

*/s/ Shawn T. Briner*
Thomas J. Fritzlen, Jr. #34653MO
Shawn T. Briner, #47286MO
16305 Swingley Ridge Road, Ste. 350
Chesterfield, Missouri 63017
Telephone:     (636) 534-7600
Facsimile:     (636) 534-5520
tjf@mllfpc.com
stb@mllfpc.com

***ATTORNEYS FOR FIDELITY***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served to all counsel of record on the 21st day of July, 2015 via the Court's ECF system.

/s/ Shawn T. Briner