UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CAPTIVA LAKE INVESTMENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10-CV-1890 (CEJ) |
| | ) | |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

This matter is before the Court on defendant's renewed motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or, in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59. Plaintiff has filed a response in opposition and the issues are fully briefed.

This diversity action concerns the availability of coverage under a loan policy of title insurance. The insured, Captiva Lake Investments, LLC (Captiva), claimed that the insurer, Fidelity National Title Insurance Company (Fidelity), was required to provide defense and indemnification with respect to various mechanics' liens and for unmarketability of title. Fidelity asserted that it had provided a defense, that coverage was barred under policy exclusions, and that there was no coverage for Captiva's alleged unmarketability of title. Both parties sought declaratory relief; Captiva additionally asserted claims for tortious interference, breach of contract-failure to defend, and breach of contract-failure to indemnify.[1] On July 24, 2015, a

---

[1] Fidelity initiated this action and Captiva asserted counterclaims. [Docs. #1 and #2]. Five days before the start of trial, Fidelity dismissed its complaint without prejudice, and the parties were realigned for trial. [Docs. #355, #360]. At the close of Captiva's case, the court sustained Fidelity's motion for judgment as a matter of law with respect to Captiva's

jury unanimously found in favor of Captiva and awarded damages in the amount of $6,289,992.00.

I.  **Background**

In 2006, National City Bank (NCB) made a loan to Majestic Pointe Development, LLC, for the development of luxury condominiums and a marina. NCB obtained the policy at issue in this case in conjunction with the loan. In 2009, Captiva purchased NCB's promissory note and deed of trust and foreclosed on the property. Multiple mechanics' liens were filed before Captiva acquired the property.

On August 3, 2009, Captiva submitted a claim to Fidelity for indemnity and defense of the mechanics' liens. Fidelity retained the law firm of Sauerwein, Simon & Blanchard (SSB) to defend Captiva in the state court mechanics' lien litigation, subject to a reservation of its rights to deny coverage. Captiva believed that the mechanics' liens were overstated and wanted SSB to investigate whether the services and goods claimed in the mechanics' liens were valid. But Fidelity instructed SSB to limit its defense to validity and priority only. Captiva accepted an offer to settle one lien (the Grau lien) in the amount of $454,000 for $5,000 and submitted a claim for coverage, which Fidelity denied. Trial Transcript Vol. II at 47-49. [Doc. #417]. In September 2012, judgment was entered in favor of five lien litigants. Fidelity appealed the judgment over Captiva's objection. The judgment was affirmed and, on June 26, 2014, Fidelity issued checks totaling more than $1.6 million to satisfy the judgments.

---

tortious interference claim. [Doc. #376]. At the close of all the evidence, Captiva elected to submit only its claim for breach of the duty to indemnify to the jury. See Jury Inst. No. 5 [Doc. #388].

2

On November 3, 2009, Captiva signed an agreement to sell the Majestic Pointe development to MLake 75, LLC, for $6,500,000. The sale was conditioned upon Fidelity providing "go forward" coverage and issuing a policy of title insurance in the amount of $10 million. There was evidence at trial that the insurer initially said that it would issue the policy. Trial Transcript Vol. I at 184. In the end, however, Fidelity declined to issue a new policy of insurance unless Captiva placed $5 million in escrow. MLake terminated the sales agreement, citing the pending mechanics' lien litigation as the reason. Captiva also asked Fidelity to provide coverage so that it could obtain financing to complete the project, but Fidelity declined to do so. Id. at 204. The project has remained in an unfinished state since Captiva assumed ownership.

On July 24, 2015, a jury unanimously found in favor of Captiva on its breach of contract claim. In response to special interrogatories, the jury found that (1) Captiva was not entitled to damages for lost opportunities; (2) Captiva was entitled to damages in the amount of $6,284,992 for the lost MLake transaction; (3) Captiva was entitled to damages in the amount of $5,000 for the Grau lien; and (4) Fidelity delayed payment on Captiva's claim without reasonable cause or excuse and thus was liable for a statutory penalty, pursuant to Mo.Rev.Stat. § 375.420. [Doc. #384]. Pursuant to the jury verdict, judgment was entered in favor of Captiva and against Fidelity in the amount of $6,919,141.20. [Doc. #391]. Captiva has filed a motion for attorneys' fees and a bill of costs, which will be separately addressed.

II. **Legal Standards**

Pursuant to Fed.R.Civ.P. 50(b), a party that has previously moved for judgment as a matter of law may renew that motion no later than 28 days after the

entry of judgment. "In the matter of a renewed [motion for judgment as a matter of law], a court must affirm the jury's verdict unless, in viewing the evidence in the light most favorable to the prevailing party, the court concludes that a reasonable jury could not have found for that party." Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006) (citation omitted). "Additionally, the court considers all evidence in the record without weighing credibility, and makes reasonable inferences and resolves conflicts in favor of the non-moving party." Id.

Rule 50(b) allows the party moving for judgment notwithstanding the verdict to move, in the alternative or jointly, for a new trial under Fed.R.Civ.P. 59. Rule 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." Id. "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence — it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." Harris v. Sec'y U.S. Dep't of Army, 119 F.3d 1313, 1318 (8th Cir. 1997) (quotations and citation omitted). The district court, however, may not "reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Id. A miscarriage of justice does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error. Buchholz v. Rockwell Int'l Corp., 120

F.3d 146, 148 (8th Cir. 1997). Errors in evidentiary rulings or in jury instructions are only prejudicial, and therefore only represent a miscarriage of justice that requires a new trial, where the error likely affected the jury's verdict. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 720 (8th Cir. 2008); Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 833 (8th Cir. 2005).

### III. Fidelity's Motion for Judgment as a Matter of Law

#### A. The effect of policy provisions on the damage award

Fidelity argues that Captiva's breach of contract claim fails because the policy granted it the right to defend the mechanics' liens until a final determination. Paragraph 8(b) of the policy's Conditions and Stipulations states: "In the event of any litigation, . . . [Fidelity] shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom . . ." As Captiva argued to the jury, however, Paragraph 8(a) required Fidelity to act "in a reasonably diligent manner" in order to avoid liability. Similarly, Paragraph 4(b) gave Fidelity the right to "take any appropriate action" to prevent or reduce loss or damage to the insured; again, however, "[i]f [Fidelity] shall exercise its rights under this paragraph, it shall do so diligently."

Captiva presented evidence that Fidelity engaged in extended litigation of the mechanics' liens in a less than diligent manner and did so for the purpose of buttressing its argument that no coverage was available under the policy. The jury could have reasonably concluded that Fidelity breached its obligation to act diligently.[2] And, where there has been a determination that an insurer did not act diligently, policy provisions permitting the insurer to undertake litigation until a final

---
[2] The same evidence also supports the jury's determination that Fidelity delayed payment on Captiva's claim without reasonable cause or excuse.

5

determination will not protect it from paying actual damages arising during the pendency of litigation. Nebo, Inc. v. Transamerica Title Ins. Co., 21 Cal. App. 3d 222, 228 (Cal. Ct. App. 1971) see also Premier Tierra Holdings, Inc. v. Ticor Title Ins. Co. of Florida, No. 4:09-CV-02872, 2011 WL 2313206, at *9 (S.D. Tex. June 9, 2011) (declining to apply policy loss limitations to claim that insurer breached covenant to act diligently).

The parties disagree about the damages that Captiva can recover for Fidelity's breach of the policy. Fidelity argues that the proper measure of damages for a claim under a title insurance policy is the cost of restoring title or the difference in fair market value. Fidelity further argues that it has paid the cost of restoring title by paying for Captiva's defense and the mechanics' liens and thus no further damages are warranted. Captiva counters that it is entitled to all damages flowing from Fidelity's breach of the duty of diligence and that Fidelity is not entitled to any limitations on liability provided for by the policy.

Captiva's position is supported by First Am. Title Ins. Co. v. Columbia Harbison LLC, No. 3:12-CV-00800-JFA, 2013 WL 1501702 (D.S.C. Apr. 11, 2013):

> [C]onfusion often exists where title insurers . . . incorrectly argue that policy terms should govern the insurer's obligations both when the insurer performs the contract and when it has breached the contract. "[W]here a covered loss occurs and the issue is what amount the insurer must pay to perform the contract to indemnify," the terms of the policy govern. Thus, if a particular policy excludes consequential damages, they will not be available where performance under the policy is the issue.
>
> In contrast, courts routinely and properly order consequential damages "as part of the standard measure of damages for breach of contract when an insurer failed to indemnify or act to defend or clear the title according to policy terms.". . . Permitting title policies to limit insurers' damages when they breach their contract would give insurers no incentive to comply with their contractual duties. Courts have recognized that lost profits, and costs from delays in construction,

6

> changing grading, and re-locating improvements, among other types of special damages, may be awarded in appropriate circumstances.

First Am. Title at *8-9 (citing 1 JOYCE PALOMAR, TITLE INSURANCE LAW § 10:18; internal citations omitted); see also Columbia Cas. Co. v. HIAR Holding, LLC, 411 S.W.3d 258, 273 (Mo. 2013) (insurer's wrongful refusal to defend placed it in position to indemnify insured for all damages flowing from breach); Premier Tierra Holdings, Inc., 2011 WL 2313206, at *9 (in absence of policy loss limitations, nonbreaching party is entitled to compensatory damages). Here, the jury concluded that Fidelity breached the parties' contract and thus the policy limitations on damages do not apply.

### B. Damages from the failed MLake sale

Fidelity argues that Captiva did not establish that it was entitled to damages from the terminated MLake sales agreement. Fidelity first asserts that there was no evidence that the pending mechanics' liens caused MLake to terminate the sale. However, MLake's corporate designee, Chadwick Sneed, testified that the sale was canceled because the mechanics' liens were not released. Fidelity also argues that Captiva is not entitled to damages for the failure of the MLake transaction because there was no evidence that the mechanics' liens could have been resolved before the MLake transaction was expected to close. The jury necessarily examined Fidelity's actions with respect to the MLake transaction and determined that its conduct at that time breached its obligation to act diligently to indemnify Captiva for the mechanics' liens.

Fidelity asserts that the $6,284,992 award of damages for the MLake transaction is speculative. There was evidence presented at trial that the sale price for the MLake contract was $4.55 million. There was also evidence that the value of

7

the property had depreciated by $1 million. Finally, Captiva presented evidence of its additional costs, including taxes, insurance and salaries for employees. This evidence, while contested, is not speculative and, if accepted by the jury, supports the damage award. The Court also rejects Fidelity's conclusory argument, made in support of its request for a new trial, that the damage award is excessive because it was a product of jury bias and prejudice.

Fidelity also argues that Captiva lacks standing to recover damages from the cancellation of the MLake sale because the sale agreement was between MLake and the owners of the membership interests in Captiva. Thus, Fidelity argues, any injury from the cancellation of the sale was suffered solely by the members of Captiva. Although Captiva objects to this argument being raised at this late stage of the proceedings, the question of standing "is jurisdictional and not subject to waiver." Lewis v. Casey, 518 U.S. 343, 349 n.1 (1996). In order to establish standing to invoke a federal court's jurisdiction, a plaintiff must show (1) an injury-in-fact (2) fairly traceable to the defendant's actions and (3) likely to be redressed by a favorable decision. Raines v. Byrd, 521 U.S. 811, 818 (1997) (citation omitted). The jury's verdict establishes that either Captiva or its members sustained an injury-in-fact as a result of Fidelity's breach. Fidelity's "standing" challenge is more properly an issue regarding the real party in interest, an issue that cannot be raised for the first time now. See Whelan v. Abell, 953 F.2d 663, 672 (D.C. Cir. 1992) (challenge on real-party-in-interest grounds must be asserted without delay to allow "real party" opportunity to step in).

### C. Defects Created After Effective Date of Policy

Fidelity reasserts its earlier argument that the policy did not provide coverage for mechanics' liens that were not recorded until after the effective date of the policy. The Court rejected this argument at the summary judgment stage and declines to readdress it here.

**D.     Unmarketability**

"A marketable title is one which not only enables the holder to hold the land, but to hold it in peace, and if there is a wish to sell, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value." Forty Bon, Inc. v. St. Louis Inv. Properties, Inc., 965 S.W.2d 471, 473 (Mo. Ct. App. 1998) (citation omitted). A title which is doubtful and suggests the need of litigation to perfect it—so that an informed and prudent person otherwise willing to pay full value will not undertake to purchase—is not marketable. Davis v. Stewart Title Guar. Co., 726 S.W.2d 839, 850 (Mo. Ct. App. 1987) (citing Patzman v. Howey, 100 S.W.2d 851, 857 (1936)).

Fidelity argues that mechanics' liens do not render title unmarketable if the insured would be able to discharge the liens out of the purchase price. The case that Fidelity cites in support, Martin v. Stone, 79 Mo. App. 309, 314 (Mo. Ct. App. 1899), addressed whether a buyer could rescind a contract based on an encumbrance where the seller agreed to use the purchase money to discharge the encumbrance. Fidelity also cites Diversified Mortgage Investors v. U.S. Life Ins. Co. of New York, 544 F.2d 571 (2d Cir. 1976), in which Second Circuit reversed a preliminary injunction order that amended the provisions of a title policy and directed the insurer to clear mechanics' liens that encumbered the insured's title. These cases are clearly distinguishable from the present matter.

Fidelity also argues that Captiva had the right to resolve the mechanics' liens and then pursue its claim for indemnification. However, there was evidence that Captiva was thwarted in its attempts to resolve the mechanics' liens. First, the court in which the mechanics' lien matters were pending rejected as untimely Captiva's attempt to present evidence that the lien amounts were inflated. Second, when Captiva did settle a mechanics' lien on favorable terms, Fidelity rejected its claim for coverage. Third, Fidelity instructed SSB not to conduct an investigation into the amounts of the mechanics' liens. Finally, at one time Fidelity threatened to invoke Paragraph 4(d) of the policy, which gives the insurer the right to terminate the contract if an insured fails to cooperate.

The Court rejects Fidelity's arguments that mechanics' liens did not render Captiva's title unmarketable.

### E. Vexatious Delay

Fidelity argues that Captiva is not entitled to damages for vexatious delay under Mo.Rev.Stat. § 375.420. "The law is well-settled that for an insured to obtain a penalty for an insurance company's vexatious refusal to pay a claim, the insured must show that the insurance company's refusal to pay the loss was willful and without reasonable cause or excuse, as the facts would have appeared to a reasonable person before trial." <u>Watters v. Travel Guard Int'l</u>, 136 S.W.3d 100, 108 (Mo. Ct. App. 2004) (citation omitted). Viewing the evidence in the light most favorable to the prevailing party, the Court concludes that a reasonable jury could have found, as this jury did, that Fidelity delayed payment without reasonable cause or excuse.

### IV. Fidelity's Motion for New Trial

### A. Exclusion 3(a)

Fidelity argues that the Court erred in barring it from presenting evidence that Captiva's claims were excluded under Exclusion 3(a) of the policy. The Court examined Exclusion 3(a) at the summary judgment stage and determined that it would apply if Fidelity could show "intentional misconduct, breach of duty or otherwise inequitable dealings" by NCB, "or that recovery for individual lien claims would amount to an unwarranted windfall because [NCB] received the benefit of the work reflected in the liens without disbursing payment." [Doc. #227 at 14-15]. The Court declines Fidelity's request to reconsider the legal bases for this determination or its finding at trial that the evidence that Fidelity proffered did not meet this standard.

### B. "Coverage Opinions"

The Court granted Fidelity's motion in limine to exclude evidence of coverage-related opinions from attorneys Captiva consulted before purchasing the loans from NCB. At trial, witnesses for both parties testified that Captiva's claim for coverage was submitted by attorney Jack Barnes. Fidelity argues that Captiva's witnesses improperly described Mr. Barnes as an expert in title insurance and improperly asserted, as lay witnesses, that they knew Captiva's claim was covered. Fidelity argues that the combined effect of this testimony was to admit into evidence an undisclosed coverage opinion. Fidelity has not provided citations to the objectionable testimony thereby hampering the Court's ability to conduct a meaningful review of this argument. However, based on what Fidelity presents in its motion, the Court disagrees that the evidence improperly placed an undisclosed coverage opinion before the jury.

## C. Evidence of the Department of Insurance Complaint

Fidelity complains that Captiva was allowed to question witness Martin Blanchard regarding a complaint Captiva filed with the Missouri Department of Insurance, in violation of the Court's order in limine to exclude such evidence.

Fidelity retained Mr. Blanchard to provide a defense on the mechanics' lien claims. After Captiva filed a complaint with the Department of Insurance, Fidelity employee Mark Dickhute asked Mr. Blanchard to review Fidelity's response to the administrative complaint. On direct examination, Mr. Blanchard testified that Fidelity had never asked him to take any action that was contrary to Captiva's interests or to defend against coverage. [Doc. #423 at 73]. The Court allowed Captiva to cross-examine Blanchard regarding his role in reviewing the administrative complaint and coverage decisions for impeachment purposes.[3] Id. at 75-76; 127-28; 153; 200. At trial, the following exchange occurred:

> Question: Now, you mentioned earlier that you had never been involved in any other coverage matters between Captiva and Fidelity; is that correct?
>
> * * *
>
> Answer: Correct.
>
> Question: When, in fact, you participated in communications with [Fidelity] and [coverage counsel] about a complaint that Captiva filed about coverage with the Missouri Department of Insurance, didn't you?
>
> Answer: I had some involvement, yes.

Id. at 199-200. Captiva then questioned Blanchard about the email exchange between himself and Dickhute regarding Fidelity's proposed response to Captiva's

---

[3] Captiva argued that Blanchard's testimony on this point was relevant to its claim that Fidelity tortiously interfered with Captiva's relationship with the SSB firm. Because the court granted Fidelity's motion for judgment as a matter of law on the tortious interference claim, it was not submitted to the jury.

12

complaint. Id. at 201-10. Blanchard testified that his review was limited to determining whether the response accurately depicted the lien litigation. On redirect examination, Fidelity moved to introduce the response to the administrative complaint to show that Blanchard made only minor edits. Id. at 210-12. The Court did not allow its admission, stating that it was not necessary to have additional evidence regarding the administrative complaint. Id. at 212.

Fidelity argues that it was prejudiced because the jury was allowed to speculate about the contents and outcome of the administrative complaint. On review of the transcript, the Court does not believe that its evidentiary rulings were incorrect or, if they were, that they affected the outcome of the trial.

### D. Withdrawal Instruction

Fidelity argues that the Court erred in allowing Captiva's lay witnesses to testify that they disagreed with Fidelity's handling of the lien litigation. Fidelity also asserts that this lay opinion evidence, in combination with other evidence, created the impression that Fidelity intentionally mishandled the lien litigation. Fidelity argues that this evidence should not have been considered by the jury because Captiva did not submit its claim for failure to defend to the jury and argues that the Court improperly denied its proffered withdrawal instruction.[4] The Court declined to give the proffered instruction because it could potentially cause the jury to disregard evidence that was appropriate for it to consider in connection with the vexatious refusal claim. Fidelity does not address this reasoning and its motion for new trial on this basis will be denied.

---

[4] Proffered Instruction F read: "The issue of breach of contract for failure to defend, including the issue of whether Fidelity met any obligation to defend with reasonable diligence, is withdrawn from the case and you are not to consider such issue [sic] is arriving at your verdict." [Doc. #389 at 6].

13

### E. Damages Evidence — Zanola Testimony

Expert witness Joseph Zanola testified regarding Captiva's lost profits caused by the delay in completing the Majestic Pointe project. Fidelity asserts that Mr. Zanola was not qualified to offer this evidence and that his opinions were unreliable. As Captiva notes, the jury determined that Captiva was not entitled to damages for lost profits and thus the error in admitting Mr. Zanola's testimony, if any, is immaterial. Fidelity's argument that Zanola's testimony primed the jury to award other damages is rejected as speculative.

### F. Dan Stegmann's "Admission"

At a Rule 30(b)(6) deposition in May 2012, Captiva corporate representative Dan Stegmann testified that Captiva was not claiming damages for the failed MLake sale. See July 14, 2015 Trial Transcript [Doc. #393 at 71-73]. Fidelity argues that Captiva should not have been allowed to present evidence that contradicted Stegmann's admission. At trial Stegmann also testified that after his deposition, Chad Sneed testified on behalf of MLake that it terminated the contract due to concern over the mechanics' liens. Fidelity extensively cross-examined Stegmann regarding his deposition testimony and his explanation for Captiva's change in position and cannot establish that it was prejudiced.

### G. Jack Davis's Testimony

Captiva member Jack Davis testified about the value of the Majestic Pointe property and Captiva's lost profits. Fidelity asserts that his lay opinion was speculative. First, as noted above, the jury did not award damages for lost profits and thus Fidelity's challenge on that basis is irrelevant. More substantively, "[t]he general rule is that a property owner, while not an expert, is competent to testify to

the reasonable fair market value of his own land. This rests on the assumption that he is particularly familiar with the characteristics of the land as well as its actual and potential uses." Cohen v. Bushmeyer, 251 S.W.3d 345, 348-49 (Mo. Ct. App. 2008) (citation omitted). Here, there was evidence that Davis and the members of Captiva met personally with the architects, visited the property more than 50 times, walked through each unit, considered whether to combine units, and addressed how to maximize functionality. The record establishes that Davis had a basis for his opinion regarding the value of the property and thus it was not error to admit his testimony.

### H. Evidence of Property Expenses

Fidelity argues that Captiva was improperly permitted to present evidence of its property expenses. It argues that these expenses fall outside the damages that can be recovered under a title policy. As discussed above, once the jury determined that Fidelity breached its obligation of diligence, the policy limits on types of damages no longer applied.

### I. Exclusion of Fidelity Expert Marc Sherman

On May 12, 2015, Fidelity disclosed Marc Sherman as an expert to rebut the testimony of Captiva's expert Zanola. At the pretrial hearing in this matter, the Court ruled that Fidelity's disclosure was untimely and concludes the same now. Furthermore, Fidelity cannot establish it was prejudiced by the exclusion because Sherman's proffered testimony was directed to Captiva's claim for lost profits, which was rejected by the jury.

### J. Jury Instructions

Fidelity asserts that the Court improperly instructed the jury on damages.

A court has broad discretion in formulating jury instructions. B & B Hardware, Inc. v. Hargis Indus., Inc., 252 F.3d 1010, 1012–13 (8th Cir. 2001). The question is "whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Id. The form and language of jury instructions are committed to the sound discretion of the trial court so long as the jury is instructed correctly on the substantive issues in the case. Gross v. FBL Fin'l Servs., Inc., 526 F.3d 356, 363 (8th Cir. 2008). Judgment will be reversed on the basis of instructional error only if the error affected the substantive rights of the parties. Gasper v. Wal-Mart Stores, Inc., 270 F.3d 1196, 1200 (8th Cir. 2001).

Fidelity challenges Instruction No. 6, which stated: "If you find in favor of Captiva on its claim for breach of contract, then you must award Captiva such sum as you believe will fairly and justly compensate it for any damages you believe Captiva sustained as a direct result of the occurrence mentioned in the evidence." [Doc. #388 at 6]. This instruction is patterned on Missouri Approved Instruction (MAI) 4.01.[5] The Court believes that Instruction No. 6 stated the proper measure of damages arising from Fidelity's breach.

Fidelity also challenges Instruction No. 5, which stated that the jury must find for Captiva on its breach of contract claim if it found that:

> First, Fidelity had an obligation to indemnify Captiva for losses and damages resulting from unmarketability of title or lack of priority concerning the mechanics' liens;

---

[5] Fidelity proffered an instruction based on MAI 9.02, which directed the jury to award "the lesser of: (1) the amount to restore title less any amount already paid by Fidelity; or (2) the difference between the fair market value of the property with the mechanics' liens in effect and the fair market value of the property without the mechanics' liens in effect less any amounts already paid by Fidelity." [Doc. #389 at 1].

Second, Fidelity did not fulfill that obligation, and

Third, Captiva was thereby damaged.

Instruction No. 5 [Doc. #388 at 5]. Fidelity notes that it is improper to submit a verdict director in the disjunctive where any one of the separate parts is not supported by the evidence. Fidelity argues that this rule applies here because Captiva did not present evidence of unmarketability. As discussed above, the record included evidence of unmarketability and Fidelity's argument is rejected. Fidelity's related argument that the Court should have offered a definitional instruction fails because Fidelity did not offer any such instruction.

### K. Mitigation Instruction

Fidelity submitted a proposed instruction on mitigation. The Court declined to give the instruction, finding that Fidelity had failed to assert mitigation as an affirmative defense and that there was not sufficient evidence presented to the jury from which it could determine the extent of any mitigation and the effect of damages. Trial Transcript [Doc. #434 at 28-29]. After reviewing the record, the Court concludes that the ruling was correct.

\* \* \*

For the above reasons,

**IT IS HEREBY ORDERED** that Fidelity's renewed motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or, in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59 [Doc. #413] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 7th day of March, 2016.