UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAPTIVA LAKE INVESTMENTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10-CV-1890 (CEJ) |
| ) | |
| FIDELITY NATIONAL TITLE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff's amended motion for attorneys' fees. Defendant has filed a response in opposition and the issues are fully briefed.

## **I.    Background**

This dispute concerns the availability of coverage under a loan policy of title insurance issued in conjunction with a development project. The insured, plaintiff Captiva Lake Investments, LLC (Captiva), claimed that the insurer, defendant Fidelity National Title Insurance Company (Fidelity), was required to provide defense and indemnification with respect to various mechanics' liens and for unmarketability of title. Fidelity asserted that it had provided a defense, that coverage was barred under policy exclusions, and that there was no coverage for Captiva's alleged unmarketability of title. Captiva asserted claims for declaratory judgment, breach of contract-failure to defend, breach of contract-failure to indemnify, and tortious interference; Fidelity asserted a claim for declaratory

judgment.[1] At the close of Captiva's case at trial, the Court granted Fidelity's motion for judgment as a matter of law with respect to Captiva's tortious interference claim. At the close of all evidence, Captiva elected to submit only its claim for breach of the duty to indemnify to the jury. See Jury Inst. No. 5 [Doc. #388]. On July 24, 2015, the jury found in favor of Captiva and awarded damages in the amount of $6,289,992.00. In response to a special interrogatory, the jury found that Fidelity delayed payment on Captiva's claim without reasonable cause or excuse and thus was liable for a statutory penalty, pursuant to Mo.Rev.Stat. § 375.420. [Doc. #384]. Pursuant to the jury verdict, judgment was entered in favor of Captiva and against Fidelity in the amount of $6,919,141.20. [Doc. #391].

Captiva initially sought attorneys' fees in the total amount of $2,233,698.00 for 6,569.7 hours of legal time, at a blended hourly rate of $340.00. The Court found that Captiva was not entitled to fees for hours expended on its tortious interference claim and directed Captiva to amend its application to remove those fees. Captiva has now submitted an amended application in which it seeks attorneys' fees in the amount of $2,162,740.00 for 6,361 hours.

II.   Discussion

As a preliminary matter, the Court notes that this case was filed in October 2010 and extends to more than 425 docket entries. Each party asserted multiple claims. The case implicated a number of issues, including the formation and interpretation of the title loan policy, the financing of the Majestic Pointe construction project, the amounts and validity of the mechanics' liens, the proper measure of damages, and the nature of the attorney-client relationship in the

---

[1]   Fidelity dismissed its claims without prejudice five days before trial. [Docs. #355, #359].

tripartite relationship among insured, insurer, and defense counsel retained by the insurer for the benefit of the insured. In addition to this litigation, the parties were involved in mechanics' lien litigation in Camden County and an administrative complaint filed with the Missouri Department of Insurance. Motion practice regarding discovery disputes was extensiv, largely due to Fidelity's conduct. There were also three rounds of dispositive motions. Finally, the parties participated in five hearings and appeared for nine days of trial.

In a diversity action, state law governs the availability of attorney's fees where no conflicting federal statute or court rule applies. <u>Weitz Co. v. MH Washington</u>, 631 F.3d 510, 528 (8th Cir. 2011). In Missouri, attorney's fees are not recoverable from another party, except when allowed by contract or statute. <u>Trim Fit, LLC v. Dickey</u>, 607 F.3d 528, 532 (8th Cir. 2010) (citing <u>Essex Contracting, Inc. v. Jefferson Cnty.</u>, 277 S.W.3d 647, 657 (Mo. 2009)).

Captiva seeks fees under Missouri's vexatious refusal statute, which states:

> In any action, suit or other proceeding instituted against any insurance company, . . . upon any contract of insurance . . ., if the insurer has failed or refused . . . to make payment under and in accordance with the terms and provisions of the contract of insurance, and it shall appear from the evidence that the refusal was vexatious and without reasonable cause, the court or jury <u>may</u>, in addition to the amount due under the provisions of the contract of insurance and interest thereon, allow the plaintiff damages for vexatious refusal to pay and attorney's fees as provided in section 375.420.

Mo. Ann. Stat. § 375.296 (emphasis added). Thus, an award of fees is authorized in this case.

Under Missouri law, factors the trial court may consider include: (1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; (2) the number of hours reasonably expended

on the litigation; (3) the nature and character of the services rendered; (4) the degree of professional ability required; (5) the nature and importance of the subject matter; (6) the amount involved or the result obtained; and (7) the vigor of the opposition. WingHaven Residential Owners Ass'n, Inc. v. Bridges, 457 S.W.3d 383, 386 (Mo. Ct. App. 2015) (citation omitted); see also Weitz Co., 631 F.3d at 528-29 (listing factors Missouri courts consider when determining reasonable attorney's fees).

The vexatious refusal statute does not require an award of attorneys' fees. Fidelity argues that the Court should exercise its discretion not to award fees because Captiva received the benefit of Fidelity's defense of the mechanics' liens and the satisfaction of those liens, in addition to damages for breach of the policy. Thus, Fidelity argues, Captiva has already been made whole. The damages awarded at trial were to place Captiva "in the position [it] would have been in had the contract been performed." Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 67 (Mo. 2000). However, damages for breach of the policy do not compensate the insured for litigation expenses and, thus the insured "is not made whole in a practical sense by an action in which [it] only recovers consequential damages flowing from the breach." Id. "The statute's provisions of attorneys' fees and the . . . penalty obviously aim to make the contracting party whole in a practical sense and to provide an incentive for insurance companies to pay legitimate claims without litigation." The Court finds that an award of attorneys' fees is appropriate.

### A. Hours Expended

Captiva seeks an award of fees for 6,361 hours. Fidelity argues that this amount should be reduced under a number of different theories.

1. **Vague Entries and Block Billing**

Fidelity argues that Captiva's fee request should be reduced by a percentage amount because its billing entries are vague and consist of block billing. "The term 'block billing' refers to the time keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Bishop v. Pennington Cty., No. CIV. 06-5066-KES, 2009 WL 1364887, at *3-4 (D.S.D. May 14, 2009) (quoting McDannel v. Apfel, 78 F. Supp. 2d 944, 946 n. 1 (S.D. Iowa 1999)). Although the Eighth Circuit does not prohibit block billing, district courts are authorized to apply a percentage reduction for inadequate documentation that hinders the court's ability to conduct a meaningful review. Id.; see also Miller v. Woodharbor Molding & Millworks, Inc., 174 F.3d 948, 949–50 (8th Cir. 1999) (remanding to district court to request more detail or apply percentage reduction based on vague billing entries).

Fidelity identifies three specific billing records as examples of unacceptable block billing.

> 6/10/14 7.1 hours: Research legal requirements for successful fee affidavit in support of motion for attorney's fees; research re history of representations made re document productions and disclosure of information; research re Major Claims Reports possibly missing as attachments to e-mail correspondence
>
> 10/13/14 5.3 hours: Prepare for and meet with client re trial strategy; research concerns expressed by client; correspondence to S. Briner re assertions of privilege; communicate with M. Toth and J. Sewell of Midwest Litigation Support re demonstrative aides for trial; review documents
>
> 3/17/15 6.3 hours; Prepare for trial; research re Department of Insurance issues, work on trial exhibits; telephone conference with C. Lindquist re damage issues; telephone conference with client re same; review court's pre-trial scheduling order; conference re same; review research re vexatious refusal;

> update proposed jury instructions; correspondence with J. Zanola
> re report; correspondence with J. Uecker re testimony

Fidelity's Objections at 13 [Doc. #429].

While these entries do not indicate how many minutes were spent on each particular task, they are sufficiently specific to communicate the work that was done and its connection to the case. Furthermore, there is no evidence that attorneys were spending an excessive amount of time on their tasks or duplicating the work done by others. "Defendant's position that counsel should be required to more specifically detail how his/her time was expended would place a tremendous burden on any counsel and would result in inefficient utilization of counsel's time." Monsanto Company v. David, No. 4:04CV425HEA, 2006 WL 2669076, at *1 (E.D. Mo. Sept. 14, 2006). The Court finds that the billing report sufficiently details the actions taken by the attorneys to allow for meaningful review of the hours expended, so a percentage reduction for block billing is unwarranted here. Where the Court determines that some reduction is necessary, it adopts the method employed by Fidelity's expert, Michael J. Brychel, by assigning an equal amount of time to each task within the entry. Thus, each of five tasks in a four-hour entry is assigned .8 hours. See Declaration of Michael J. Brychel ¶ 19 [Doc. #429-2].

### 2. Fees for Specific Claims

Fidelity argues that the vexatious refusal statute prohibits recovery of fees for the hours Captiva expended on the parties' cross-claims for declaratory judgment. Fidelity notes that the Eighth Circuit has held that the "Missouri Vexatious Delay Statute is inapplicable to declaratory judgment actions such as this one brought by an insurance carrier." Hawkeye-Security Ins. Co. v. Davis, 277 F.2d 765, 771 (8th Cir. 1960). In Hawkeye-Security, the defendant insureds requested

attorneys' fees under the statute after they prevailed at trial and on appeal. The Eighth Circuit denied the request, noting that the insureds did not plead a right to fees or ask for attorneys' fees in the trial court; furthermore, there was no basis for finding that the insured had acted vexatiously. Id. at 771-72. Hawkeye-Security is inapplicable to a case such as this, where the insured asserted claims for coverage under the policy. Indeed, Captiva had no choice but to defend against Fidelity's declaratory judgment claims in order to bring the breach of contract claim on which it prevailed.

Fidelity also argues that Captiva is not entitled to fees for work on its failure-to-defend claim. Under Missouri law, where a prevailing plaintiff's claims "are based on different legal theories and facts, and counsel's work on one claim is unrelated to work on another, then the court should treat the unrelated claims as if they had been raised in separate lawsuits." DeWalt v. Davidson Serv./Air, Inc., 398 S.W.3d 491, 507 (Mo. Ct. App. 2013) (citation omitted). However, "if the claims for relief have a common core of facts and are based on related legal theories, so that much of counsel's time is devoted generally to the litigation as a whole and rendering it difficult to divide the hours expended on a claim-by-claim basis, such a lawsuit cannot be viewed as a series of distinct claims." Id. Thus, where a case involves "multiple counts with a common core of facts and related legal theories" that "all arose from the same conduct," the courts are not required to segregate attorney's fees for each claim. Williams v. Plaza Finance Corp., 78 S.W.3d 175, 186 (Mo. Ct. App. 2002) (affirming award for all fees where plaintiff brought claims for federal odometer fraud, state odometer fraud, and fraudulent misrepresentation, but prevailed only on federal claim). Captiva's two contract claims arose from its

7

allegations that Fidelity breached its duties under the parties' contract of insurance. Based on its familiarity with this case, the Court does not believe that the litigation would have been conducted differently if Captiva had proceeded solely on its claim for breach of the duty to indemnify.

As noted above, the Court previously stated that Captiva was not entitled to recover attorneys' fees on its tortious interference claim. [Doc. #407]. Captiva amended its motion, eliminating 208.7 hours. Fidelity has identified an additional 205.21 hours expended on this claim. The Court has reviewed the billing records at issue and concludes that an additional 71.33 hours can be attributed to Captiva's tortious interference claim. In particular, the Court will disallow fees for time spent on claims for tort of bad faith, breach of fiduciary duty, and breach of an insurer's ethical duties. In addition, the Court has disallowed fees for briefing on Fidelity's dispositive motion on the tortious interference claim, and for preparing and deposing expert witnesses on this claim. The Court rejects Fidelity's assertion that fees for work associated with Captiva's administrative complaint and in obtaining its file from SSB are related solely to the tortious interference claim.

Fidelity asserts that the Court should disallow fees for time Captiva spent on the issue of adverse inference instructions because no such instruction was requested. The background on this issue is as follows: On April 23, 2013, the Court appointed William A. Whitledge as an expert to examine Fidelity's computer systems after Fidelity failed to comply with court orders directing it to produce electronically-maintained records. On January 7, 2015, the Court found that Fidelity's failure to impose a litigation hold had resulted in the loss of discoverable evidence and that Captiva had been prejudiced as a result, justifying the imposition

of sanctions. Memorandum and Order [Doc. #280]. The Court rejected as too harsh Captiva's request to strike Fidelity's pleadings, but stated that it would issue an adverse-inference instruction at trial. The Court also directed Fidelity to pay one half of Captiva's costs for the inspection and attorneys' fees associated with bringing its sanctions motion.[2] Captiva ultimately decided not to request an adverse inference instruction.

Fidelity conducted a key-word search of Captiva's billing record for items it asserts are associated with the adverse inference instruction. The resulting exhibit is 49 pages long and lists billing entries amounting to $242,149.40 that Fidelity argues should be disallowed. Fidelity's search is too broad and captures fees Captiva expended in its efforts to compel Fidelity to produce materials as ordered by the Court. Captiva is entitled to be compensated for the four discovery-related motions it had to file in order to address Fidelity's failure to properly produce discoverable material and adequate privilege logs. By contrast with Fidelity's overbroad examination, the Court has identified 30.26 hours properly attributable to the abandoned adverse-inference instruction. However, Captiva's decision not to pursue the instruction avoided unnecessarily extending the litigation and the Court declines to reduce the fee award on this basis.

### 3. Degree of Success

Fidelity also argues that the Court should reduce Captiva's fees by fifty percent because it achieved only limited success. A prevailing party's degree of success is a crucial factor in determining the appropriate amount of a fee award. See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). When there is only limited

---

[2] Captiva has excluded time expended on this sanctions motion from its present request for fees.

success on claims based on a common core of facts or related legal theories, the trial court "should focus on the significance of the overall relief obtained." Trout v. State, 269 S.W.3d 484, 488 (Mo. Ct. App. 2008) (quoting Hensley, 461 U.S. at 435). On the other hand,

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

Hensley, 461 U.S. at 435 (internal citation omitted).

Fidelity's contention that Captiva's success was less than excellent rests on the fact that the jury did not award Captiva damages for lost opportunities, which Captiva valued at $12 million. The jury was instructed on a single claim for breach of contract and found in favor of Captiva. The jury was given a choice of awarding damages for lost opportunities or for the lost MLake transaction. The jury selected the latter and awarded $6,284,992. The jury also found that Fidelity's conduct was without reasonable cause or excuse, entitling Captiva to a statutory penalty in the amount of $629,149.20, plus attorneys' fees. The Court does not accept Fidelity's premise that Captiva achieved only limited success.

### 4. Additional Challenges

Fidelity asks the Court to discount fees when more than one attorney attended a deposition or hearing. See Ex. D [Doc. #429-6]. Where more than one attorney represents the prevailing party, the contribution of all attorneys must be taken into consideration and the fees awarded should reflect the efforts of all, at

least to the extent that the time reported does not reflect duplication of effort or work that would be performed by nonlawyers. A.J. by L.B. v. Kierst, 56 F.3d 849, 863-64 (8th Cir. 1995) (quotation and citation omitted). The Court has reviewed the relevant billing entries and concludes that the attendance by more than one attorney was warranted by the complexity of the litigation.

Fidelity also identifies 26 hours of "administrative tasks" that it argues should be disallowed, including drafting an engagement letter, preparing indices of exhibits, and addressing technical issues. Ex. E [Doc. #429-7]. It is appropriate to apply a discount when parties request fees for hours expended by attorneys on work that can properly be done by administrative staff. In this case, however, all work was billed at the same hourly rate, regardless of who performed it.[3] Fidelity's objection to fees for administrative tasks is overruled.

### B. Hourly Rate

Captiva seeks a "blended" hourly rate of $340 for all work performed on this matter by attorneys and paralegals. Although Fidelity previously accepted this hourly rate, see Doc. 283, it now argues that it cannot evaluate whether this is a reasonable rate without knowing the actual billing rates for the services rendered. "[W]hen fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates." Warnock v. Archer, 397 F.3d 1024, 1027 (8th Cir. 2005) (citation omitted).

Captiva has submitted a list of the hourly rates for all attorneys and paralegals during the time period they worked on the case, showing rates ranging

---

[3] The Court typically disallows fees for clerical tasks, such as filing documents in the case record. Betton v. St. Louis County, 4:05CV1455 JCH, 2010 WL 2025333, at *7 (E.D. Mo. May 19, 2010) (citation omitted). The tasks identified by Fidelity are not clerical.

11

between $170 for a paralegal and $560 for an attorney. Based on its "own experience and knowledge of prevailing market rates," the Court thinks it highly likely that, had it chosen to do so, Captiva could have established that the individual hourly rates it reports are reasonable.

Rather than bill at different rates for each staff member, however, Captiva elected to rely on a blended rate. The Court finds that the blended hourly rate of $340 is appropriate in this case. First, attorneys Steven Hall and Richard Wunderlich account for two-thirds of the total hours expended in this case. An hourly rate of $340 for their services is more than reasonable in light of the expertise of counsel, the quality of their representation, and the complexity of the litigation. Furthermore, the blended rate represents a significant discount for all of the hours expended by Mr. Wunderlich, whose rate increased from $445 to $545, and for a portion of the hours expended by Mr. Hall, whose hourly increased from $305 to $390. Furthermore, if all hours were billed at the lowest hourly rates reflected in Captiva's list the total fees would amount to $1,987,260, or approximately $175,000 less than what Captiva requests at the blended rate. It is highly likely that the blended hourly rate resulted in a lower fee request than the traditional method of billing at individual hourly rates would have.

Fidelity reasserts its argument that it is entitled to discovery on "Captiva's counsels' actual billing rates for services, Captiva's fee arrangement with counsel, and whether Captiva was actually billed for and paid the attorney's fees Captiva now seeks to recover." The Court believes that the Richard Wunderlich's amended declaration in support of Captiva's request for fees adequately addresses the

information the Court requires for making its determination. Additional discovery will only increase the already considerable costs of this protracted litigation.

\* \* \* \* \*

After considering all the requisite factors, the Court finds that an award of fees is appropriate, and that Captiva's requested hourly rate of $340 and the hours expended, minus 71.33, are reasonable. The Court will award fees for 6,289.67 hours for a total award of $2,138,487.80.

Accordingly,

**IT IS HEREBY ORDERED** that Captiva's amended motion for attorneys' fees [Doc. #421] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Captiva is awarded attorneys' fees in the amount of $2,138,487.80.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 7th day of March, 2016.