UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAPTIVA LAKE INVESTMENTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:10 CV 1890 SNLJ |
| ) | |
| FIDELITY NATIONAL TITLE INS. ) | |
| CO., SUCCESSOR-BY-MERGER TO ) | |
| LAWYERS TITLE INS. CORP., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM and ORDER

This matter was tried before a jury in July 2015. The jury awarded over $6 million damages to plaintiff as to one of its two claims. The trial court granted judgment as a matter of law to defendant on plaintiff's other claim. The parties appealed. On February 28, 2018, the United States Court of Appeals for the Eighth Circuit issued its opinion vacating the jury award and affirming the trial court's granting of judgment as a matter of law. (#469.) Because the trial judge had since retired from the bench, the undersigned was assigned to preside over the matter on remand. The defendant --- having prevailed on appeal --- now seeks entry of final judgment in its favor (#476) and also filed its bill of costs, seeking $157,490.30 (#481). Plaintiff objects. The matter has been fully briefed and is ripe for disposition.

**I.  Motion for Entry of Final Judgment**

The facts of this case are tedious, and only a skeletal version of the facts is outlined below.  In March 2006, National City Bank of the Midwest ("National") loaned Majestic Pointe Development Company, L.L.C. ("Majestic"), $21,280,000 so that Majestic could build lakeside condominiums (the "Project").  National purchased a title insurance policy from Fidelity National Title Insurance Company ("Fidelity").  The title insurance policy was dated March 15, 2006 and later amended to October 25, 2007.

The policy insured, as of the date of the policy,

> … against loss or damage…sustained or incurred by the insured by reason of:
>
> 3.  Unmarketability of title;…
>
> 7.  Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material.

The policy also included Exclusion 3(a), which is standard in policies such as these, which "excludes from coverage any loss or damage that arose by reason of…defects, liens, encumbrances, adverse claims or other matters:…created, suffered, assumed or agreed to by the insured claimant."

By March 2008, National had paid out all but $1.2 million of the total loan balance, but National's consultant had concluded there would be insufficient funds to complete the Project.  National ceased funding Majestic's disbursement requests. Between April 2008 and December 2009, the original contractor and thirteen

subcontractors filed mechanics' liens against the property, claiming over $7 million was owed to them.

Majestic defaulted on its agreement with National and went bankrupt. National sold its interest in the Project to Captiva Lake Investments, LLC ("Captiva"), which became the successor-in-interest under the title insurance policy. Captiva filed a claim with Fidelity in August 2009, seeking coverage for mechanics' liens that had been filed against the property. Captiva sought to resolve the mechanics' lien claims quickly. Fidelity agreed to defend Captiva, subject to reservation of its rights under the policy based on Exclusion 3(a). That provision excluded from coverage loss or damage that arose by reason of liens "created, suffered, assumed or agreed to by the insured claimant."

Although Fidelity hired counsel for Captiva to handle the mechanics' liens, the liens were not resolved as quickly as Captiva would have liked. Captiva had been in negotiations with another entity, MLake, to purchase Captiva's membership interests in the Project. MLake ultimately terminated the agreement due to the problem of the mechanics' liens. In August 2010, Captiva filed an additional claim with Fidelity under the policy's unmarketability-of-title provision, alleging that Fidelity had rendered the title unmarketable by failing to resolve or insure over the pending mechanics' lien claims..

The parties then engaged in litigation in federal court beginning in October 2010. By the time of trial, Captiva elected not to submit its claims for declaratory judgment and for breach of contract for failure to defend to the jury. The trial court granted Fidelity's

motion for judgment as a matter of law on Captiva's tortious interference claim. The one remaining claim for the jury was breach of contract for failure to indemnify arising from the unmarketability of title and additional damages for Fidelity's vexatious refusal to pay.

The trial court refused to allow Fidelity to present its Exclusion 3(a) defense that National had itself "created, suffered, assumed, or agreed to the" mechanics' liens. The jury found that Fidelity had breached the title insurance policy and awarded more than $6 million in damages to Captiva.

On appeal, the Eighth Circuit held that the district court did not apply the correct legal standard in deciding that Exclusion 3(a) did not apply to the mechanics' liens at issue in this case. The Court held, "[u]nder the appropriate standard, Fidelity was entitled to present to the jury its defense that National City had 'created, suffered, assumed or agreed to' the mechanics' liens." (#469 at 4.) The Court also concluded

> that Captiva failed to show that the title was unmarketable on or before the effective date of the policy and thus failed to prove its claim that Fidelity breached the policy's unmarketability-of-title provision.

(*Id.*) The Court also affirmed the trial court's dismissal of the tortious interference claim. The Court then stated "we vacate the judgment and remand the case for further proceedings. We also vacate the order awarding attorneys' fees and costs." (*Id.* at 29.)

On remand to this Court, Fidelity filed a bill of costs (#481) and a motion for entry of judgment in its favor (#476). Fidelity asserts that, "under the law of the case doctrine, this Court is bound on remand to comply with the Eighth Circuit's mandate and may not re-examine issues already settled by the Opinion." (#476 ¶ 5.) Because, Fidelity insists,

4

all of Captiva's claims were either abandoned at trial or disposed of by the Eighth Circuit's Opinion, nothing remains of Captiva's case.

Captiva responds that the law-of-the-case doctrine does not apply here, where not all issues were actually decided by the Court of Appeals. Captiva goes on to articulate the various claims it maintains were considered by the jury in making its award but that were not affected by the Eighth Circuit's opinion.

Much of the Opinion is devoted to discussing the Exclusion 3(a) defense that Fidelity sought to argue to the jury. As the Eighth Circuit wrote,

> The district court concluded, however, that the exclusion would apply only if Fidelity "show[ed] intentional misconduct, breach of duty, or otherwise inequitable dealings by National City Bank, or that recovery for individual lien claims would amount to an unwarranted windfall because National City received the benefit of the work reflected in the liens without disbursing payment." *Fidelity Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*, 941 F. Supp. 2d 1121, 1130 (E.D. Mo. 2013)…. [The district court] ruled that Fidelity would have to present evidence of misconduct before the court would submit the Exclusion 3(a) defense to the jury….
>
> After accepting Fidelity's offer of proof, the district court excluded the proffered evidence. Fidelity argues that the district court erred in so ruling.

(#469 at 10-11.) The Eighth Circuit, observing that "Exclusion 3(a) is the most litigated clause in standard title insurance policies" (#469 at 12), concluded that "Exclusion 3(a) can apply under Missouri law even if the insured did not engage in intentional misconduct or inequitable dealings." (*Id.*) The district court thus "erred when it required Fidelity to show that National City engaged in intentional misconduct or inequitable

5

dealings and thus abused its discretion when it excluded evidence regarding Fidelity's Exclusion 3(a) defense." (*Id.* at 13.)

That defense, of course, was relevant to Captiva's claim for breach of contract for failure to indemnify arising from the unmarketability of title. Fidelity would not need a new trial to offer that defense, however, because the next section of the Eighth Circuit's Opinion was fatal to Captiva's claim. The unmarketability of title claim required that Captiva show that title to the Majestic development was clouded by mechanics' liens as of the date of the policy. The Eighth Circuit held that Missouri law "does not allow the date of later-filed mechanics' liens to relate back to the date work began for the purpose of coverage under a title insurance policy's unmarketability-of-title provision." (*Id.* at 20.) Thus, the Court held that the unmarketability-of-title coverage claim required Captiva to show that "title was rendered unmarketable by mechanics' liens filed by contractors and suppliers who were owed money as of the Date of Policy." (*Id.* at 23.) The Court noted that Captiva "cannot show that it suffered damages caused by Fidelity's failure to resolve liens that were inchoate as of October 25, 2007, and which were later filed against the Majestic Pointe development." (*Id.*) That is, because the problematic mechanics' liens did not arise until after the Policy date, there was no insurance coverage available for any resulting unmarketability of title.

Thus, it appears to this Court that the Eighth Circuit has foreclosed Captiva from bringing its unmarketability of title breach of contract claim --- the Policy simply did not

provide coverage for the unmarketability of which Captiva complained.  There could thus be no vexatious refusal to pay claim based on the same.

Captiva attempts to craft other claims that it maintains are contained within its marketability of title breach of contract claim.  Captiva states that it "presented a substantial amount of evidence to the jury that allowed the jury to conclude that Fidelity was not diligent in defending the mechanics' lien litigation and that this lack of diligence damaged Captiva."  (#487 at 5-6.)  Captiva states that such evidence "is a separate basis for Captiva's breach of contract claim."  (*Id.* at 6.)  Fidelity responds that Captiva never pleaded such a breach of contract claim --- rather, any evidence at trial related to Fidelity's lack of diligence was presented for claims Captiva actually pleaded regarding its marketability, vexatious refusal, and tortious interference claims.  This Court agrees that Captiva cannot not rely on evidence used at trial for claims actually pleaded to assert a right to trial on remand for claims never asserted, or for claims that were abandoned.  *See, e.g.*, *Pariser v. Christian Health Care Sys., Inc*., 816 F.2d 1248, 1253 (8th Cir. 1987) (affirming denial of post-trial motion for leave to amend complaint and noting "While Pariser did introduce some evidence that would be relevant to a tortious-interference claim, this evidence was also relevant to Pariser's other claims, so its introduction did not provide the defendant any notice that a claim for tortious interference with contractual relations was being tried.").

Similarly, Captiva's suggestion that the Eighth Circuit overlooked other claims (such as failure to indemnify for damages that resulted from the lack of priority of the

7

deed of trust over the mechanic liens) fail for the same reasons. Indeed, although an instruction allowed the jury to find for Captiva if it found Fidelity had an obligation to indemnify Captiva "for losses of damages resulting from unmarketability of the title **_or_** lack of priority concerning the mechanics' liens," Captiva's counsel did not even mention the "lack of priority coverage provision" in his closing argument, nor did Captiva raise the possibility in its briefs on appeal. In fact, the damages the jury awarded --- $6,284,992 --- are exactly what Captiva's attorney asked the jury for with respect to the unmarketability of title: counsel asked for $5.5 million for the failed MLake transaction and $784,992.10 in property upkeep expenses that Captiva claimed it would not have incurred had the MLake transaction closed. Moreover, Captiva raised the lack of priority issue for the first time in its petition for rehearing after the Eighth Circuit issued its Opinion, and the Eighth Circuit denied rehearing. Captiva is not now entitled to a new trial on issues that it did not raise.

The Eighth Circuit remanded this matter for further proceedings consistent with its opinion. The Court affirmed dismissal of Captiva's tortious interference claim. The Court held that Captiva had not shown that title to the Majestic development was clouded by mechanics' liens as of the date of the policy, and the Court vacated the entire jury award. In light of those rulings, all that remains is for this Court to enter judgment in favor of Fidelity. Defendant Fidelity's motion will be granted.

## II. Bill of Costs

Local Rule 54-8.03 states that a Bill of Costs must be filed "no later than twenty-one (21) days after entry of final judgment." Fidelity filed its Bill of Costs (#481) before its motion for entry of final judgment had been ruled on, and Captiva thus objected to the Bill of Costs as having been prematurely filed.

Fidelity responds that the Local Rules also require that a Bill of Costs be filed within 21 days of the Eighth Circuit's mandate, which was filed on June 2, 2018. The Eighth Circuit had granted Fidelity's request for costs on appeal. Accordingly, the Court will award Fidelity the taxable costs specified in the Bill of Costs Fidelity filed on June 25, 2018.

Accordingly,

IT IS HEREBY ORDERED that Fidelity's motion for entry of final judgment (#476) is GRANTED.

IT IS FURTHER ORDERED that Fidelity's Bill of Costs (#481) shall be awarded.

Dated this __30th__ day of August, 2018

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE